**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone:  602-606-2810    Facsimile:  602-606-2811

Dennis I. Wilenchik, #005350
David N. Ferrucci, #027423
admin@wb-law.com
*Attorneys for Plaintiff Justine Wadsack*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justine Louise Wadsack,<br><br>Plaintiff,<br><br>v.<br><br>City of Tucson, a municipal corporation; Ryder Schrage, both in his personal and official capacity as a City of Tucson police officer; Lauren Pettey, both in her personal and official capacity as a City of Tucson police officer; Kevin Hall, both in his personal and official capacity as a City of Tucson police officer; Frank Hand, both in his personal and official capacity as a City of Tucson police officer; Jane Doe Schrage; John Doe Pettey; Jane Doe Hall; Jane Doe Hand; John Does 1-10 and Jane Does 1-10; and ABC Corporations 1-10,<br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT**<br><br>**(Conspiracy to Commit Violations of 42 U.S.C. § 1983; Violations of 42 U.S.C. § 1983; Wrongful or Malicious Prosecution)**<br><br><br>**(Jury Trial Demanded)** |

Plaintiff Justine Louise Wadsack, for her Complaint against Defendants, hereby allege as follows:

### JURISDICTION AND VENUE

1.      Plaintiff brings this action pursuant to 42 U.S.C. § 1983; the First and Fourteenth Amendments to the United States Constitution.

2.      This Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, and 1343.

3.      The wrongful acts giving rise to this lawsuit occurred in Pima County and therefore Venue is proper under 28 U.S.C.A. § 1391.

## GENERAL ALLEGATIONS

4.      Plaintiff realleges and incorporates, by this reference, her claims, facts, and allegations in the paragraphs above, as if set forth fully herein.

5.      Plaintiff is an individual and was an Arizona State Senator at the time of the events alleged herein.

6.      Defendant City of Tucson Police Department is a non-justiciable entity but part of the Defendant City of Tucson, which is a municipal corporation of the State of Arizona and/or governmental entity that acts through its employees, agents and independent contractors, including the Tucson Police Department ("TPD"). All acts of the TPD are attributable to either the City of Tucson ("City") or Defendants Ryder Schrage, Lauren Pettey, Kevin Hall, and Frank Hand and their respective spouses, Jane Doe Schrage, John Doe Pettey, Jane Doe Hall, Jane Doe Hand, if applicable. The individual Defendants are all employees of the TPD and the City.

7.      Plaintiff is informed and believes and based thereon alleges that Defendants Assistant Chief Kevin Hall and Captain Frank Hand are responsible for implementing, maintaining, sanctioning, or condoning policies, customs or practices under which the illegal or wrongful acts hereinafter complained of occurred. Because of these policies, practices or customs, Defendants Assistant Chief Kevin Hall and Captain Frank Hand are liable for the damages hereinafter complained of.

8.      All Defendants were acting under color of law at the time of the events and in the manner described herein.

9.      At all times material herein, Defendants John Does 1-10 and Jane Does 1-10 and ABC Corporations 1-10 were public officials, officers, agents, and/or employees of Defendant City of Tucson.

10.     The individual Defendants engaged in wrongful conduct that allowed, caused, and/or contributed to cause the violations of Ms. Wadsack's constitutional rights. Their actions and/or inactions constitute actions of the City of Tucson. The City of Tucson is directly liable for their wrongful conduct and/or for failing to have in place suitable practices and policies to properly contain the individual Defendant's wrongful conduct or had such practices and policies but failed to properly administer them or ensure their compliance.

11.     The true names, capacities, and relationships, whether individual, corporate, partnership, or otherwise of all John and Jane Doe Defendants and ABC Corporations, are unknown at the time of the filing of this Complaint and are being designated pursuant to applicable federal and state law. The plaintiff further alleges that all of the fictitiously named Defendants were jointly responsible for the actions, events, and circumstances underlying this lawsuit, and that they proximately caused the damages stated in this Complaint. Plaintiff will amend the Complaint to name the unidentified individuals once she has learned, through discovery, the identities and acts, omissions, roles, and/or responsibilities of such Defendants sufficient for Plaintiff's to discover the claims against them.

**FACTUAL BASIS FOR CLAIMS FOR RELIEF**

12.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

13.     The Arizona Constitution governs the limits of the executive branch, which includes the Tucson Police Department and the City. The executive branch has limited authority over members of the Arizona legislature. Const. Art. IV, Pt. 2, § 6 states that a "Member of the Legislature shall be privileged…in all cases…"  Exceeding speed is included in §6.  The people of Arizona gave all members of the legislature this privilege to prevent the executive branch from interfering with the legislative branch. This privilege was also meant to prevent the executive branch from interfering in the election of members of the legislature.

14.     The Tucson Police Department has General Orders which set out the official policies of how the department handles situations involving legislators. General Order 2813.3

3

Traffic Enforcement Involving Legislators states:

> While the legislature is in session, both the U.S. and Arizona Constitutions provide federal and state legislators with immunity from arrest for any offense except those involving treason, felonies or breaches of the peace. (A breach of the peace includes disorderly conduct, assault, domestic violence, etc., but not DUI.). **This immunity from arrest exists during the term of the legislative session and extends for 15 days before and after the session.** This immunity also applies to civil traffic offenses during this same time period.

15.     Prior to entering the legislature, all members attend a class with the legislative legal counsel.  They are told that they are privileged from arrest or citation for speeding. They are also instructed that if pulled over for speeding to tell the officer their name and that they are members of the state legislature to properly invoke this immunity provision.

16.     All members of the legislature are given vehicle placards to place on their vehicles while in session as well so as to denote their status to police officers and others. On March 15, 2024, Senator Wadsack, a duly elected member of the legislature, which at the time was in session, was driving her vehicle, which displayed her Arizona State Senator placard attached to her rear license plate. She was not speeding excessively or over the speed limit to her recollection at the time she was pulled over by patrol officer Defendant Ryder Schrage. Senator Wadsack advised Defendant Schrage she was in a hurry but that she was not speeding. She was curious why she had been pulled over.

17.     The foregoing "stop" occurred on March 15, 2024, during the legislative session, near the intersection of Speedway and Park. Senator Wadsack was not cited at that time after explaining she was not speeding and was a state senator and at the conclusion of the stop was told she was free to go. She asked whether there was any evidence of her speeding because she did not believe she was, and the officer answered that he had her clocked over the speed limit on a radar gun.

18.     Tucson Police Officer Ryder Schrage conducted the traffic stop after seeing the Arizona State Senator placard on Senator Wadsack's vehicle.

19.    After a brief conversation with Senator Wadsack, Officer Schrage immediately called Sergeant Daniel Martinez who spoke with the town legal advisor Rebecca Kasin. The legal advisor told Sergeant Daniel Martinez that Senator Wadsack had legislative immunity and could not be cited. Sergeant Martinez had no intention of filing a summons or taking any further action on the matter.

20.    Sergeant Martinez briefed his chain-of-command Lieutenant Lauren Pettey. Lieutenant Pettey, Assistant Chief Kevin Hall and Captain Frank Hand met in the weeks after March 15, 2024 and acknowledged that Senator Wadsack had immunity and should not have been stopped. Whether they admit it or not, she should never have been stopped.

21.    Senator Wadsack believed that the incident had been fully resolved. She was never issued a ticket and never believed she would be ticketed after the legislative session ended. Had she received a ticket in a timely manner, she would have taken it to the Capitol and asked Legislative Council what the next steps were.

22.    A legislative member should not be charged with speeding after the legislative session had ended, particularly beyond the 15 days provided, based on an alleged speeding incident that occurred during session, particularly where no evidence of the speeding is produced.

23.    Upon information and belief, Senator Wadsack was singled out for this type of treatment and suddenly charged with a misdemeanor criminal speeding ticket, after the session ended. This continued the improper practice that began with stopping her vehicle in the first instance and accused her of excessive speeding. It is believed that this was all part of a plan of members of the TPD to act in concert with not yet known City officials to ruin Plaintiff's good reputation because she was introducing legislation these members of TPD felt were adverse to their interests. For these improper reasons and motives, Defendants sought to cause Senator Wadsack embarrassment and emotional distress as well as destruction to her character and legislative position by charging her with  the bogus traffic crime, and publicizing it,  knowing that by revealing it to media outlets, adverse publicity would ensue and cause her to either drop out, or lose her primary race she otherwise would have won, thus seriously harming her future

occupation as a legislator and harming her career as a real estate agent.

24.     All of Defendants' retaliation occurred because Plaintiff was investigating the Tucson police, was an outspoken critic of the Tucson City government, was a member of the legislature's Freedom Caucus, and because she is a woman and her primary opponent was a man who TPD officials felt could be controlled better than Plaintiff. Upon further information and belief, Senator Wadsack drew the ire of the TPD and the City because of two bills she spearheaded in the legislature. One would have changed voting from large vote centers back to precinct-level voting and the other bill would have removed Tucson's status as a charter city.

25.     Right before her speeding ticket was resurrected, and almost four months after the alleged incident occurred, Senator Wadsack also had begun an investigation into the Tucson PD after one of her constituents asked for help after being harassed by Tucson PD while in the County. In June of 2024, Senator Wadsack's assistant requested a meeting with the Tucson Police Chief, to discuss the alleged incident of harassment. Shortly thereafter, the Tucson PD endorsed Senator Wadsack's opponent in the Republican primary, and due to their efforts in besmirching Plaintiff's reputation, her opponent won.

26.     On or about June 27, 2024, Defendant Lauren Pettey, who has since been promoted to Captain, filed a police report wherein Pettey stated she had a phone conversation with Senator Wadsack. Upon information and belief, even though Tucson Police have a policy to record all phone conversations, and according to Pettey's own words it is Tucson policy, Pettey's conversation with Wadsack was not recorded, although Pettey told Wadsack that it was being recorded. Wadsack asked for the recording and it was not available.[1]

27.     According to the Pettey's departmental police report, Pettey "informed [Wadsack] the reason for the call was to arrange a time for her to sign her criminal speeding citation from

---

[1] Pettey's report includes a footnote that states: "It should be noted that when this phone call began I was in the process of transitioning offices heading to the TPD Hangar for a meeting, so my BWC had already been placed in my vehicle. By the time I went to retrieve it to record, the conversation had ended."

March 15th."

28.    During the phone call, Senator Wadsack explained patiently to Pettey that there was no citation issued and asked Pettey: "Do you give all the legislators you pull over after session these tickets?" To which Pettey responded: "Just you."

29.    Pettey's police report contains the following gratuitous and irrelevant statements about Pettey's unrecorded phone conversation with Senator Wadsack:

> She [*i.e.*, Wadsack] immediately became defensive and argued that she was in fact not speeding. I explained that there was probable cause to issue her a citation for criminal speeding and that she could present her arguments to the judge; however, she refused to meet to sign the citation and said she would not accept it. She also was upset that she was being cited several months after the fact and I explained that was due to the legislative session was ongoing at the time of the traffic stop (thus legislative immunity to be issued a ticket on March 15th) however it did not prevent her from receiving a ticket once the legislative session adjourned. She demanded to speak with the Chief of Police and said that she was under "political persecution."

30.    Pettey intended to release her report to the media to further harass and cause damage to Plaintiff, without ever citing to Plaintiff where it provided that she could be charged any time after the session ended with criminal speeding no less. Pettey could not cite, and did not cite anything in support. Plaintiff asked to be provided all evidence of the alleged criminal speeding, and she has never been provided with any such evidence whether it be body cam footage, or radar readouts or results, or otherwise.

31.    The Pettey Report's allegation that Senator Wadsack "said that she was under 'political persecution'", which was not her statement, as demonstrated below, became the basis for numerous news articles, and became the publicly stated basis the Arizona Fraternal Order of Police withdrew their endorsement of Senator Wadsack. Pettey and the Defendants knew this would grab the attention of the media and cause Wadsack further distress and damage. It was malicious. In fact, Wadsack had told Pettey on the phone she was glad the conversation was being recorded and that she wanted a copy of the recorded. Of course, Wadsack was later told Pettey

did not record the call and did not have any recording, although it is believed such a recording may have existed and had been destroyed.

32.     Defendant Pettey ordered Officer Schrage to issue a criminal complaint against Senator Wadsack. Upon information and belief, not only has Tucson PD not cited legislators for these types of speeding violations, but they have never gone around the chain of command and had a lieutenant direct a patrol officer to issue a criminal citation for a state senator.

33.     Thereafter, on July 19, 2024, Officer Ryder Schrage filed a long-form criminal complaint with the Tucson City Magistrate alleging excessive speed, a class 3 criminal misdemeanor, and no proof of insurance, a civil offense.  The long-form complaint did not list the speed at which Plaintiff was accused of driving.

34.     The City then issued a criminal misdemeanor summons and sought to serve process on Senator Wadsack.

35.     Thereafter, upon information and belief, Lieutenant Pettey, Assistant Chief Kevin Hall and Captain Frank Hand conspired to and did leak information about Senator Wadsack's traffic stop to the press and her political opponent prior to Senator Wadsack the criminal complaint. The purpose was malicious so as to destroy Plaintiff's career and cause her damage and was in conscious disregard for the rights of Plaintiff.

36.     Defendants each acted with deliberate indifference to Plaintiff's constitutional rights of equal protection, and due process in pulling her over and setting her up for a bogus traffic violation, citing her for one they knew was bogus and contrived, and doing so after the law provided she could be cited, and then purposefully leaking all this to the press including that she was somehow attempting to be treated differently than others when in fact she was exercising a state constitutional right of immunity as she was instructed to do.

37.     Ultimately, Plaintiff went through a diversion program, whereupon the criminal misdemeanor was dismissed with prejudice and with the State's knowledge and without objection, constituting a favorable termination, and after Plaintiff hired a lawyer who deposed many of the individuals at the TPD involved with the matter. That lawyer was elected as Pinal County Attorney

WILENCHIK & BARTNESS

and had to then resign from the case.

38.    On or before July 18, 2024, the Tucson Police Department leaked information to the press that it would soon criminally charge Senator Wadsack for the alleged moving violation on March 15, 2024. This was less than two weeks before Senator Wadsack's contested primary election. It was released purposefully as part of a scheme to ruin Plaintiff, her reputation, and her re-election bid.

39.    Upon information and belief, before the Tucson Police Department criminally charged and began to leak information to the media, polling indicated that Senator Wadsack had a 13-point lead over her primary opponent, and she was slated to win for re-election.

40.    On July 18, 2024, a day before Officer Schrage filed the long-form complaint and before the complaint was signed by the Tucson City Court Magistrate, Senator Wadsack received an email inquiry from Dylan Smith with the Tucson Sentinel. In the email, Smith stated that, "TPD has indicated that they intend to issue a criminal citation in this case." This same information was leaked to Senator Wadsack's political opponent by Defendants on July 18, 2024. Defendants hatched a scheme to influence an election, with their own version of an "October surprise." This leak led directly to Senator Wadsack losing her police union endorsement and ultimately her re-election primary. These actions of wrongful prosecution were deliberate and purposeful and designed to affect a coup by TPD for political reasons.

41.    For the ensuing two weeks prior to the primary election, there were numerous news stories about the alleged speeding incident repeating again and again baseless allegations; those stories continue to the present time and are available on the Internet. Upon information and belief, this negative press amounted to millions of dollars of earned media for Senator Wadsack's primary opponent, specifically, approximately $9 million in earned media.

42.    On July 20, 2024, the Tucson Sentinel published an article titled:  "Sen. Justine Wadsack claims 'political persecution' over Tucson criminal speeding ticket[.]" Although Senator Wadsack did not respond to the Tucson Sentinel's inquiries, the Tucson Sentinel accused Senator Wadsack of claiming "political prosecution" based not on anything Senator Wadsack told them,

but on what Defendant Pettey wrote in her slanted report where she falsely claimed Senator Wadsack said she was being politically prosecuted.

43.     Based on Defendant Pettey's leaked, partly false, supplemental report and the unrecorded alleged hearsay statement by Senator Wadsack that was widely reported in the media, Arizona Fraternal Order of Police withdrew their important endorsement of Senator Wadsack.

44.     In doing so, Paul Sheldon, President of the Fraternal Order of the Police ("FOP"), admitted that the FOP did so because of the unrecorded statements Senator Wadsack allegedly made to Lieutenant Pettey during their private phone call.  Mr. Sheldon stated:

> "While Sen. Wadsack has been a consistent supporter of public safety in her official capacity, this incident and her decision to publicly impuning [sic] the motives of police personnel is conduct unbecoming an elected representative," said Paul Sheldon, the FOP president. "Our endorsement committee reviewed this situation carefully, then voted to retract this endorsement. Like everyone else accused of a traffic violation, Sen. Wadsack is innocent until proven guilty. But attacking police personnel for doing their jobs is simply unacceptable."[2]

45.     Prior to the FOP pulling their endorsement, Senator Wadsack did not publicly impugn the motives of police personnel; she only allegedly did so in her private phone call with Defendant Pettey. And she has never attacked police personnel for doing their jobs—a flagrant and false charge. Media began publishing news articles reporting on that aspect of Defendant Pettey's leaked report, which was not an accident but a purposeful statement Defendants knew the press and others would grab onto. For example, in the waning weeks of the primary, Senator Wadsack was subjected to 10 straight days of headlines such as the following:

- Arizona lawmaker loses police endorsement after calling her speeding

---

[2]
https://www.tucsonsentinel.com/opinion/report/072324_senator_justine_wadsack_op/wadsacks-speedergate-fiasco-costs-her-police-endorsement/ [last visited February 17, 2025]

WILENCHIK & BARTNESS

ticket 'political persecution'[3]

- Sen. Justine Wadsack claims 'political persecution' over Tucson criminal speeding ticket[4]

- Police org revokes endorsement of Justine Wadsack for 'impugning' police[5]

- Sen. Justine Wadsack is popped for doing 71 in a 35 zone. Naturally, she sees a conspiracy[6]

- Wadsack's SpeederGate fiasco costs her police endorsement[7]

- Senator Justine Wadsack loses Fraternal Order of the Police endorsement over speeding probe[8]

- State Senator Claims 'Political Persecution" After Being Caught Driving 71 MPH In 35-MPH Zone[9]

- Police org revokes Wadsack endorsement for 'impugning' police[10]

---

[3] https://www.coloradopolitics.com/arizona-lawmaker-loses-police-endorsement-after-calling-her-speeding-ticket-political-persecution/article_5267c861-2f4b-5b90-94bf-f9a5af15c134.html [last visited February 17, 2025]

[4] https://www.tucsonsentinel.com/local/report/071924_wadsack_speeding/sen-justine-wadsackclaims-political-persecution-over-tucson-criminal-speeding-ticket/ [last visited February 17, 2025]

[5] https://azmirror.com/briefs/police-org-revokes-endorsement-of-justine-wadsack-for-impugning-police/ [last visited February 17, 2025]

[6] https://www.azcentral.com/story/opinion/op-ed/laurieroberts/2024/07/22/justine-wadsack-speeding-ticket-senator-persecution/74503129007/ [last visited February 17, 2025]

[7] https://www.tucsonsentinel.com/opinion/report/072324_senator_justine_wadsack_op/wadsacks-speedergate-fiasco-costs-her-police-endorsement/ [last visited February 17, 2025]

[8] https://www.kvoa.com/video/senator-justine-wadsack-loses-fraternal-order-of-the-policeendorsement-over-speeding-probe/video_212bd421-b2c3-5c73-8f9b-c5bec1da82aa.html [last visited February 17, 2025]

[9] https://jalopnik.com/state-senator-claims-political-persecution-after-being-1851603506 [last visited February 17, 2025]

[10] https://www.pinalcentral.com/politics/police-org-revokes-wadsack-endorsementforimpugning-police/article_ba22b680-4a15-11ef-a51d-07614e260f36.html [last visited February 17, 2025]

46.    Senator Wadsack lost her re-election primary bid to Vince Leach by fewer than 2,000 votes notwithstanding this continual barrage of false reporting based on Defendants' scheme to ruin Plaintiff.

47.    Unlike many other similarly situated defendants, Senator Wadsack was not offered a diversion or plea agreement, such as traffic school, at her criminal arraignment.

48.    During the discovery phase of the criminal proceedings against Senator Wadsack, although Wadsack requested the information, the Tucson PD never produced the body cam video of the alleged incident and never produced any evidence of Senator Wadsock's alleged speed, as they claimed to have, including Radar evidence, the radar unit, logs or otherwise.

49.    When Tucson PD filed the long-form criminal complaint, it possessed no admissible evidence to support a violation of criminal speeding under A.R.S. § 28-701.02. More specifically, as the Tucson PD and City of Tucson were fully aware, because the City could not produce the radar unit, any radar logs, or evidence from any radar that may have been used, no calibration records,[11] accuracy measurements, or maintenance records, no documentary evidence that any radar that was allegedly used in this matter was working properly on March 15, 2024, no analytical or scientific evidence to demonstrate proper functioning, the City possessed no admissible evidence of the alleged speeding to prove its case beyond a reasonable doubt, and therefore the City had no probable cause to prosecute the claim, let alone a reasonable belief it could ever prove its case beyond a reasonable doubt.

50.    Again, although the Body Cam footage for the incident was requested by Senator Wadsack during the criminal proceedings, the City of Tucson did not produce it.

51.    However, the Axon Body Cam footage was obtained by the local news media and was highlighted in the media's reporting of the incident.

52.    Tuscon PD leaked the body-cam video to the news media.

---

[11] Upon information and belief, the radar equipment used in Tucson police vehicles are calibrated one single time when they are installed on the vehicle and are never calibrated again.

53.     The Tucson Sentinel posted the Body Cam video on its YouTube page.[12]

54.     In the Body Cam footage, Officer Ryder Schrage stated to Senator Wadsack: "you were going over 70". Plaintiff responded: "**I was not doing 70**". To which Officer Shrage stated: "Yes, you were. I was behind you; **I had my radar on**". Again, Tucson never produced any such radar evidence of the radar to substantiate Schrage's statement because it was false, and part of the pretext to harass and damage Plaintiff's reputation and ability to run for office.

55.     At approximately 3 minutes and 12 seconds into the Body Cam video, the audio is turned off for reasons that are not explained and remains off for the rest of the almost 22-minute video. As a result, the portion of the video that contains Officer Schrage's discussion with Sgt. Daniel Martinez and possibly others, and that forms the basis for the final paragraph in his police report contains no audio.

56.     Upon information and belief, no media outlet reported that the body cam contains more than 18 minutes of silent video.

57.     Upon information and belief, the Fraternal Order of Police did not issue a statement expressing concern that the majority of the body-cam video contained no audio.

58.     A trial in the matter was set for December 23, 2024.

59.     On or about December 11, 2024, the Court in the criminal matter granted, *inter alia*, the defendant's motion to subpoena Police Officers Daniel Martinez, Lauren Pettey, and Jesse Cornia to testify at the December 23, 2024 trial.

60.     Shortly thereafter, on or about December 19, 2024, the bench trial that was scheduled for December 23, 2024 trial was vacated over no objection from the State.

61.     On or about January 6, 2025, the criminal case was terminated in Plaintiff's favor and without conviction when it was dismissed with prejudice. Plaintiff attended a diversion class and the case was dismissed without objection by the State.

62.     Upon information and belief, the trial was cancelled and the criminal complaint was

---

[12] https://www.youtube.com/watch?v=I9u6VY5iBGk&t=733s [last visited February 17, 2025].

13

ultimately dismissed with prejudice because the City had no evidence to prosecute the claim, had not probable cause to issue the criminal complaint in the first instance, knew it had no such evidence to convict beyond a reasonable doubt, and because the criminal prosecution had already achieved its intended purpose—to damage Plaintiff's reputation in the community, chill her exercise of First Amendment rights, release harmful information to the media, and ultimately have her lose the Republican party primary in her re-election bid.

## CLAIMS FOR RELIEF

## COUNT I

**(Conspiracy to Commit Violations of 42 U.S.C. §1983 - All Defendants)**

63.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

64.    The wrongful conduct of Defendants, as alleged herein, was undertaken pursuant to an agreement or meeting of the minds among Defendants to act in concert to violate Ms. Wadsack's constitutional rights, silence Ms. Wadsack's political opposition, deprive her of due process of law, treat her differently than others and deprive her of equal protection under the law, target her for prosecution on trumped up and phony charges, chill Ms. Wadsack's political free speech, and knowingly and wrongfully interfere with her right to hold public office and pursue her chosen occupations.

65.    Defendants did so under color of state law and in their official capacities and their acts and/or omissions as alleged herein to pursue the prosecution of Ms. Wadsack (that was later dismissed with prejudice), were undertaken maliciously, with an evil mind guiding an evil hand, and in conscious disregard for her substantial constitutional rights, pursuant to the conspiracy among Defendants to deliberately violate Ms. Wadsack's constitutional rights and/or in deliberate indifference to her constitutional rights including the right to seclusion and privacy and to not be harassed and targeted by law enforcement and charged with false accusations motivated by malice or ill will.

14

66.     As a direct and proximate cause of Defendants' conspiracy. Ms. Wadsack's constitutional rights were violated and she has been seriously damaged, and able to show over 8 million dollars in damages directly caused by Defendants conduct, not inclusive of emotional distress, and psychic trauma and other general damages incurred.

67.     The acts and omissions of Defendants in furtherance of their conspiracy, acting in their official capacities and under color of law, were malicious and/or in reckless disregard of Ms. Wadsack's rights.

## COUNT II

**(Violations of 42 U.S.C. § 1983: Free Speech, Law Enforcement Retaliatory Conduct, Malicious and/or Selective Prosecution, and Abuse of Process - All Defendants)**

68.     Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

69.     At all times material hereto, all Defendants were acting ostensibly under color of law and in their capacity as officials and agents for the City of Tucson.

70.     The wrongful conduct of Defendants alleged herein this Complaint constitutes violations of the United States Constitution, Amendments I and XIV, in that Ms. Wadsack was deprived of privileges and immunities guaranteed to all citizens of the United States, was subjected to malicious and selective prosecution, retaliatory conduct, and was criminally prosecuted without proper and/or probable cause, with an unconstitutional motive and malice, and without equal protection or due process in an attempt to chill Plaintiff's free speech and criticism.

71.     As a direct and proximate result of Defendants' wrongful conduct as alleged herein, Ms. Wadsack's constitutional (and other) possible federal statutory rights were violated and she has suffered harm and has been injured.

72.     The wrongful conduct of these Defendants as alleged herein was undertaken with malice and/or with improper and unconstitutional motives in an attempt to deter political speech and conduct protected by the Constitution. Ms. Wadsack was criminally prosecuted by or at the behest of Defendants for improper unconstitutional motives, was treated differently than others

15

similarly situated, was subjected to improper abuse of process and power for improper motives, and had criminal charges filed against her without probable cause, without any good faith basis to believe a conviction could be secured, and with malice.

73.    The criminal charges against Ms. Wadsack were terminated in Ms. Wadsack's favor when they were dismissed with prejudice and without a conviction and without state objection. *See Thompson v. Clark*, 596 U.S. 36, 39 (2022) ("To demonstrate a favorable termination … a plaintiff need only show that his prosecution ended without a conviction.").

74.    Ms. Wadsack was subjected to Defendants' wrongful and unconstitutional conduct as alleged herein in a particularly egregious, conscience-shocking manner that must be deterred.

75.    The acts and omissions of Defendants acting in their individual capacities and under color of law as alleged herein, was malicious, punitive, and in reckless disregard of Ms. Wadsack's rights.

76.    As a result, punitive damages in an amount to be determined by a jury should be awarded against the Individual Defendants to punish them for wrongdoing and to prevent them and others from acting in a similar manner in the future.

## COUNT III

**(Violations of 42 U.S.C. § 1983 Based on Direct Violations of the First and Fourteenth Amendments to the United States Constitution - All Defendants)**

77.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

78.    The conduct of Defendants violated Plaintiffs rights to freedom of speech and equal protection under the law as guaranteed by the First and Fourteenth Amendments to the United States Constitution and entitles Plaintiff to recover damages pursuant to 42 U.S.C. 1983. The conduct of the Defendants that violated Plaintiffs rights included a conspiracy by one or more of the Defendants to violate Plaintiffs rights.

79.    Defendants formed a conspiracy to deprive Plaintiff of her civil rights by seeking to have her maliciously prosecuted by the City of Tucson for allegedly violating Arizona's criminal

speeding statute. They engaged in this conduct in order to further their own political goals. Plaintiff raised questions about the conduct of the Tucson PD. She raised these questions in her capacity as an Arizona State Senator. The conspirators decided to bring the criminal charge and to leak those charges to the press in order to defeat Plaintiff's re-election effort. The charges were made public just prior to the 2024 primary election. Plaintiff was, in fact, defeated for re-election. An additional motivation of the conspirators is that Plaintiff is a woman.

80.     Upon information and belief, the City of Tucson, acting through its agents and elected officials, adopted a custom to select and prosecute criminally all persons who took public positions contrary to the Defendant's political positions and who raised issues about City of Tucson employees, including the Tucson PD.

81.     These actions deprived Ms. Wadsack of her rights to petition the government for redress of grievances, of freedom of speech, and to hold public office in violation of the First Amendment to the United States Constitution. Ms. Wadsack was also deprived of her rights to the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

82.     The Defendants were successful in having Plaintiff wrongly and maliciously prosecuted by the City of Tucson. This prosecution was terminated in Plaintiff's favor and without conviction.

83.     By reason of the Defendants' conduct, Plaintiff was deprived of her right to Petition the government for redress of grievances, of freedom of speech and to hold public office in violation of the First Amendment to the United States Constitution. Plaintiff was also deprived of her right to the equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution.

## COUNT IV

**(Violations of 42 U.S.C. § 1983 and the Fourteenth and First Amendments to the United States Constitution Based on *Monell* Doctrine - All Defendants)**

84.     Plaintiff realleges and incorporates by reference the allegations set forth in each of

the preceding paragraphs of this Complaint.

85.    The City of Tucson charged Plaintiff with criminal speeding under A.R.S. § 28-701.02. This charge required the City to prove not only that Plaintiff was speeding, but that she "[e]xceed[ed] the posted speed limit by more than twenty miles per hour[.]" Criminal speeding in Arizona is a Class 3 misdemeanor that categorizes a speeding violation as a criminal offense. Such a charge necessarily requires evidence of the speeding violation with a great deal of precision.

86.    As a criminal defendant, Plaintiff had a right to face her accuser under the Confrontation Clause of the Sixth Amendment to the U.S. Constitution. And as a citizen and as an individual running for elected office, Plaintiff had a First Amendment right to engage in political activity. And as a woman, Plaintiff had a right to equal protection under the Fourteenth Amendment to the U.S. Constitution.

87.    Upon information and belief, the City of Tucson used an express official policy, or a longstanding practice or custom to violate Plaintiff's constitutional rights.

88.    Upon information and belief, the City of Tucson has either an express official policy, or a longstanding practice or custom, to not preserve or otherwise maintain patrol car radar gun readouts, such that even if there was a radar gun readout in this case (there was not), no evidence of it would have been preserved. Upon information and belief, the City of Tucson has either an express official policy, or a longstanding practice or custom, to not preserve any scientific indicia of the reliability of such radar gun readouts. Upon information and belief, the City of Tucson does not ensure the scientific reliability of radar gun readouts, such as calibration records, accuracy measurements, maintenance records, documentary evidence that any radar used was working properly at the time of use, or any analytical or scientific evidence to demonstrate proper functioning at the time of use.

89.    Stated somewhat differently, upon information and belief, the City of Tucson has a policy of inaction when it comes to ensuring, and then subsequently proving, the scientific reliability of patrol car radar readouts and such inaction amounts to a failure to protect constitutional rights.

90.    Upon information and belief, the City of Tucson's express official policy, or longstanding practice or custom, or policy of inaction, as described above, reflects a deliberate indifference to the plaintiff's constitutional rights. Upon information and belief, the City of Tucson was aware of the potential for constitutional violations and failed to take appropriate action to prevent them.

91.    Upon information and belief, the City of Tucson relied upon the express official policy, or longstanding practice or custom, or policy of inaction described above to charge Plaintiff with criminal speeding, with full knowledge that they had no probable cause to institute the proceedings against Plaintiff, and would not be able to obtain a conviction.

92.    The City of Tucson had no probable cause to institute the criminal proceedings against Plaintiff because the City had no evidence to prove that Officer Schrage's patrol car's alleged radar gun readout was reliable or functioning properly at the time it allegedly measured the speed of Plaintiff's vehicle.

93.    Alternative or additionally, upon information and belief, there was no probable cause to institute the criminal proceedings against Plaintiff because the criminal prosecution was induced by corruption or other wrongful conduct undertaken in bad faith and maliciously. *See e.g., Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).

94.    Upon information and belief, the chilling of Plaintiff's political speech was a substantial or motivating factor in the defendants' wrongful conduct. More specifically, as detailed herein, the City of Tucson's public officials, known and not-yet known, knowingly made false or unprovable accusations and engaged in other wrongful, concerted conduct, such as leaking to the press those false or unprovable accusations, that resulted, as they had intended, in the institution of an unfounded and unprovable criminal charge, and substantially infringed Plaintiff's First Amendment rights.

95.    In violation of the Fourteenth Amendment to the United States Constitution, defendants, and the unknown City officials, violated Plaintiff's right to equal protection because their false and/or unprovable accusations and other wrongful actions that led to the institution of

criminal proceedings were intentionally discriminatory because Plaintiff is a woman.

96.     The foregoing constitutes direct violations under the First and Fourteenth Amendment, which, although they are closely related to the malicious prosecution claim in a number of respects, require independent consideration. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004).

## JURY TRIAL

97.     Plaintiff hereby requests a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for damages for judgment against Defendants as follows:

A.      General damages in an amount to be proven at trial;

B.      Punitive damages in an amount deemed just and reasonable against the Individual Defendants as to the causes of action alleged herein;

C.      Costs and attorneys' fees against all Defendants as to the causes of action alleged under the Constitution and laws of the United States, pursuant to 42 U.S.C. § 1988;

D.      The costs of litigation;

E.      All remedies provided by 42 U.S.C. § 1983; and

F.      Such other and further relief which may seem just and reasonable under the circumstances.

**RESPECTFULLY SUBMITTED** on March 27, 2025.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
David N. Ferrucci, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Plaintiff Justine Wadsack*