Joseph D. Williams, State Bar No. 032795
Peter Collins, Jr., State Bar No. 012666
GUST ROSENFELD, P.L.C.
One S. Church Ave., Suite 1900
Tucson, AZ  85701
Tel: 520-628-7070
jwilliams@gustlaw.com
pcollins@gustlaw.com

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Justine Louise Wadsack, | No. 4:25-cv-00145-JGZ |
| Plaintiff, | **MOTION TO DISMISS** |
| v. | **(Oral Argument Requested)** |
| City of Tucson, a municipal corporation; Ryder Schrage, both in his personal and official capacity as a City of Tucson police officer; Lauren Pettey, both in her personal and official capacity as a City of Tucson police officer; Kevin Hall, both in his personal and official capacity as a City of Tucson police officer; Frank Hand, both in his personal and official capacity as a City of Tucson police officer; Jane Doe Schrage; John Doe Pettey; Jane Doe Hall; Jane Doe Hand; John Does 1-10 and Jane Does 1-10; and ABC Corporations 1-10, | |
| Defendants. | |

Defendants City of Tucson (the "City"), Ryder Schrage, Lauren Pettey, Kevin Hall and Frank Hand (the "Police Defendants"), by their attorneys, Joseph D. Williams and Peter Collins of the law firm of Gust Rosenfeld, P.L.C., and pursuant to Fed. R. Civ. P. 12(b)(6), hereby move the Court for an order granting their Motion to Dismiss.

IN SUPPORT THEREOF, Defendants state as follows:

**CERTIFICATE OF CONFERRAL**

Pursuant to LCivR 12.1(c), Defendants certify that, before filing the motion, Defendants' counsel notified Plaintiff's counsel through phone and email of the issues

asserted in this Motion, and the parties were unable to agree that the Complaint was curable in any part by a permissible amendment offered by Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This case is a political charade. On March 15, 2024, Wadsack was driving 71 miles per hour on Speedway, a 35-mile-per-hour road in Tucson, while "racing to get home." Officer Schrage was behind her, observed her, clocked her on his radar, and stopped her for speeding. Wadsack told Officer Schrage she was a legislator and was "racing to get home" because her Tesla battery was about to die. Since she was a legislator, Officer Schrage waited until the legislative session concluded and then issued a traffic ticket for speeding and failure to provide proof of car insurance. Essentially, Wadsack's claims that the traffic ticket was not due to her driving 71 in a 35, but Defendants' contempt for her actions as a legislator. In fact, this instance was a routine traffic procedure, the consequences of which most people would accept. For the reasons set forth below, the Court should dismiss the Complaint in its entirety.

## II.   ARGUMENT

**A.   Standard of Review.**

This Court should dismiss each claim against each Defendant. A defendant may move to dismiss if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court considering such a motion faces two inquiries. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (stating the two common principles to the Supreme Court's pleading-standard cases). First, the court should decide which allegations in the complaint earn the presumption of truth. *Id.* To earn that presumption, the allegations "may not simply recite the elements of a cause of action." *Id.* Rather, they "must contain sufficient ... underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Id.*

The second inquiry calls on the court to consider whether those allegations "plausibly suggest an entitlement to relief." *Id.* Where those allegations "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief," and the allegations fall short. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and brackets omitted).

**B.     The Police Defendants are entitled to qualified immunity.**

To state a claim for relief under § 1983, courts require plaintiffs to "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

The doctrine of qualified immunity protects city officials from personal liability as long as their conduct is objectively reasonable and does not violate clearly established federal rights. *See Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 964 (9th Cir. 2010). An official is entitled to qualified immunity unless the plaintiff can show "(1) the facts '[t]aken in the light most favorable to [plaintiff] ... show [that] the [defendants'] conduct violated a constitutional right' and (2) the right was clearly established at the time of the alleged violation." *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *rev'd on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)). "Both prongs entail questions of law that [the court] ... may answer in either order." *Bonivert v. City of Clarkston*, 883 F.3d 865, 872 (9th Cir. 2018).

**1.     Failure to State a Claim for Fourteenth Amendment Violations.**

**a.     Probable cause existed.**

Wadsack's claim is implausible because the alleged facts do not demonstrate that the prosecution lacked probable cause. Wadsack charges the City and the Police Defendants, rather than any individual prosecutor, for her malicious prosecution claims.

While it is possible to charge non-prosecutors with malicious prosecution, the Police Defendants may only be held liable under very limited circumstances, which are not present here.

To prevail on a § 1983 claim of malicious prosecution, a plaintiff "must show that the defendants prosecuted [her] with malice and without probable cause, and that they did so for the purpose of denying [her] equal protection or another specific constitutional right." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) (internal citations omitted). Probable cause for the initiation of a criminal prosecution exists where "it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime." *Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1164 (9th Cir. 2011).

While Wadsack alleges that she was not going 70 and does not remember speeding excessively or going over the speed limit, Wadsack admits she was driving "in a hurry" and was "racing to get home." *See* Complaint [Doc. 1], ¶ 16; Schrage Bodyworn Axon Camera Video of Wadsack Traffic Stop, Exhibit A, at 00:08[1]. When Wadsack denied going 70 miles per hour, Officer Schrage responded, "Yes, you were. I was behind you. I had my radar on." Exhibit A, at 00:26; Doc. 1, ¶ 54. Wadsack does not allege that Officer Schrage was not behind her.

Probable cause may be based on personal observations and hearsay, including statements heard by the officer. In *Hart v. Parks*, police officers relied on hearsay and other unsubstantiated information that would not be admissible in court to determine probable cause to make an arrest. 450 F.3d 1059, 1066–67 (9th Cir. 2006). The court held

---

[1] Wadsack references Officer Schrage's bodyworn camera recording and the content thereof extensively in her Complaint. Doc. 1, ¶¶ 16, 48, 50 - 57. The Complaint does not dispute what was said during the traffic stop as recorded in the video. The Court may take judicial notice of the bodyworn camera. *See Five Points Hotel P'ship v. Pinsonneault*, 835 F.Supp.2d 753, 757 (D. Ariz. 2011); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (At the 12(b)(6) stage, a court may consider documents incorporated by reference in the complaint, matters of judicial notice, documents the plaintiff refers extensively, or documents that form the basis of the plaintiff's claim).

that because police had probable cause to arrest him, the plaintiff's malicious prosecution claim failed. *Id.* at 1071 (9th Cir. 2006).

Officer Schrage relied on his personal knowledge of driving behind Wadsack and hearing Wadsack describe her speed as "racing." Probable cause rests on Schrage's personal observation of her excessive speed from "behind her." The radar merely quantified the magnitude of her illegal speed. *See State v. Nash*, No. 1 CA-CR 14-0486, 2015 WL 6156877, at *2 (Ariz. Ct. App. Oct. 20, 2015) ("the officer had probable cause to believe that [plaintiff] committed the crime of excessive speeding. The officer personally witnessed [plaintiff]'s driving and verified his speed").

Wadsack alleges that Officer Schrage's radar evidence would have been inadmissible at her criminal trial and that the City could not produce sufficient evidence to convict her. Doc. 1, ¶ 49. Yet, it is immaterial whether the City's evidence supporting the speeding citation was admissible at trial. A finding of probable cause for initiating a criminal proceeding can rest on evidence that, by itself, would not be sufficient to prove guilt in a criminal trial. The *Hart* court reasoned that probable cause may be founded on evidence that is not admissible in court, and that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial. *Id.* at 1066–67. This Court should consider only those facts available to Officer Schrage and not consider the separate issue of admissibility.

Even if Officer Schrage did not use his radar to measure Wadsack's speed, such is immaterial to the probable cause analysis, because his observation while driving behind her and her admission to "racing" are sufficient to establish probable cause. *See Smith v. Almada*, 640 F.3d 931, 937–38 (9th Cir. 2011) (rejecting the plaintiff's claim that an officer's false statements caused malicious prosecution because "even after correcting for the allegedly false and omitted information[,] ... probable cause supported [plaintiff's] arrest ... [and] prosecution") (citations omitted). Materiality is a question for the court, and in that context, Wadsack must demonstrate that the magistrate judge would not have

issued the summons or signed the criminal complaint "with false information redacted, or omitted information restored." *Smith*, 640 F.3d at 937 (internal quotation marks and citation omitted); *see also Scotti v. City of Phoenix*, 609 Fed. Appx. 386, 387–88 (9th Cir. 2015) (affirming the district court's grant of summary judgment to defendant officer on a malicious prosecution claim because "probable cause—independent of the false information conveyed by [the arresting officer]—supported [plaintiff's] arrest and prosecution") (citation omitted).

Even if probable cause did not exist, the Police Defendants would still be entitled to qualified immunity because Wadsack cannot show that the lack of probable cause was "sufficiently clear that every reasonable official would have understood that what he [was] doing violate[d] that right." *Ashcroft*, 563 U.S. at 731 (internal quotations omitted). A reasonable officer could have concluded that probable cause existed based on Officer Schrage's personal observation and Wadsack's admission to "racing." *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("Even if . . . they (and the magistrate) erred in concluding that probable cause existed . . . the [defendants] would be entitled to qualified immunity because their decision was reasonable, even if mistaken").

Although Wadsack attacks the validity of Officer Schrage's radar gun, there are no allegations suggesting that Officer Schrage did not observe Plaintiff or did not believe in his own observations of Plaintiff "racing" or failing to have proof of insurance. There are no allegations that Captain Pettey knew Schrage's statements were false when she "ordered" Schrage to "issue a criminal complaint." Moreover, Wadsack does not allege a lack of probable cause to issue the citation for her lack of proof of insurance. Therefore, a reasonable officer encountering these circumstances could have concluded that there was probable cause to cite Wadsack for speeding and failure to provide proof of car insurance.

For these reasons, this Court should determine that Wadsack fails to allege the lack of probable cause and find that her Fourteenth Amendment claims fail as to the Police Defendants.

### b. **Wadsack fails to show that each Defendant caused the criminal prosecution.**

When a plaintiff brings a § 1983 claim against non-prosecutors for malicious prosecution, the plaintiff must allege specific facts showing that the defendant controlled the decision-making process of the prosecutor or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings. *Samuelson v. Jewell School District 8*, 725 F. Supp. 3d 1195 (2024).

The Complaint alleges that Captain Pettey "ordered Officer Schrage to issue a criminal complaint" against Wadsack. Doc. 1, ¶¶ 32-33. Wadsack provides no information describing how the Police Defendants influenced the prosecutor. She does not allege communication between the prosecutor and the Police Defendants. She does not allege that the Police Defendants' wrongful motives were ever conveyed, expressed, or imputed onto the prosecutor. She does not allege that the prosecutor paid attention to the news stories about her. Furthermore, the Court may take judicial notice that each of the news stories cited in footnotes 3-10 of the Complaint (Doc. 1 ¶ 45) was published *after* the criminal complaint was submitted; therefore, they could not have interfered with prosecutorial discretion. Even assuming either Officer Schrage or Captain Pettey specifically asked a prosecutor to charge Wadsack, without more specific evidence courts presume that a prosecutor's charging decision "result[ed] from an independent determination on the part of the prosecutor." *Awabdy,* 368 F.3d at 1067; *see also Daniels v. Cnty. of Alameda*, 842 F. App'x 110, 112 (9th Cir. 2021) (holding same).

Furthermore, even if Captain Pettey included false or misleading statements in her police report, such an act does not change the fact that the information upon which Officer Schrage acted furnished probable cause. Pettey's "later improper act in writing a

misleading report does not change the result . . . they do not constitute malicious prosecution." *Slade v. City of Phoenix*, 112 Ariz. 298, 301, 541 P.2d 550, 553 (1975).

Therefore, this Court should dismiss the Fourteenth Amendment claims in Count II as to all Defendants because it was objectively reasonable for all Defendants to believe Wadsack was speeding and failed to provide proof of car insurance.

### 2. Failure to State a Claim for First Amendment Violations.

A plaintiff in a First Amendment retaliation action must plead and show the absence of probable cause for pressing the underlying criminal charges. *Hartman v. Moore*, 547 U.S. 250 (2006); *see also Nieves v. Bartlett*, 587 U.S. 391 (2019) (a plaintiff pressing a retaliatory arrest claim based on speech protected by the First Amendment generally must plead and prove the absence of probable cause for the arrest).

As explained *supra*, the Court's analysis may stop here because the Complaint contains facts sufficient for the Court to conclude that probable cause existed.

An elected official bringing a claim under § 1983 for First Amendment retaliation has the initial burden of pleading: (1) she engaged in constitutionally protected activity; (2) as a result, she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022) (internal quotation marks and citations omitted).

Wadsack's retaliation claim is not based on constitutionally protected activity. She alleges that her protected speech was "introducing legislation" (Doc. 1, ¶ 23) and "spearheading" two legislative bills (Doc. 1, ¶ 24). Performing such governmental acts is not protected speech under the First Amendment. The Supreme Court has held that "a legislator has no [First Amendment] right to use official powers for expressive purposes." *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 127 (2011). Under *Carrigan*, any official action in the legislature that tends to "the passage or defeat of a particular

proposal" is properly understood as a prerogative of membership in that body. *Linthicum v. Wagner*, 94 F.4th 887, 893 (9th Cir. 2024) (citing *Carrigan*, 564 U.S. at 125–26).

Because Wadsack cannot claim that the Police Defendants retaliated against her for introducing or spearheading legislation, any retaliation must be based on Wadsack's other activities described in the Complaint. Wadsack fails to plausibly allege a causal connection between her investigation into TPD and the Police Defendants' actions. Wadsack alleges that her "investigation" of TPD occurred four months after Officer Schrage's stop and "right before" she was charged by the City (not the Police Defendants). Since the alleged investigation occurred after Officer Schrage's traffic stop, it could not have been the basis for retaliation or falsifying probable cause for the speeding ticket. Furthermore, she does not suggest that the Police Defendants were the subject of her investigation or had any knowledge of such investigation.

Therefore, Wadsack fails to allege a substantial causal relationship between her criticism of TPD and Officer Schrage's traffic stop and subsequent filing of a complaint, and this Court should dismiss the First Amendment claims.

### 3. Failure to State a Claim for Conspiracy.

This Court should apply the intracorporate conspiracy doctrine and dismiss the conspiracy claim against all Defendants. The U.S. District Court for the District of Arizona applies the intracorporate conspiracy doctrine to alleged conspiracies to violate civil rights. *See e.g.*, *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1074 (D. Ariz. 2012) ("Plaintiffs' conspiracy claims are appropriately dismissed under the intracorporate conspiracy doctrine, which bars a claim for conspiracy where the allegation is that an entity conspired with its employees to violate an individual's constitutional rights"), *aff'd sub nom. Stapley v. Pestalozzi*, 733 F.3d 804 (9th Cir. 2013).

While the Ninth Circuit has reserved the question of whether individual members of a single government entity can form a conspiracy to violate civil rights, *see Armstrong v. Reynolds*, 22 F.4th 1058, 1085 fn. 8 (9th Cir. 2022), in unreported cases, it has been

found that it is not clearly established that the intracorporate conspiracy doctrine is inapplicable to § 1983 claims. *See, e.g., Long v. Weeks*, No. 23-55004, 2024 WL 1672258, at *1 (9th Cir. Apr. 18, 2024); *Lobato v. Las Vegas Metro. Police Dep't*, No. 22-16440, 2023 WL 6620306, at *2 (9th Cir. Oct. 11, 2023).

Furthermore, Wadsack alleges only conclusory allegations, upon "information and belief," connecting the Police Defendants to one another. *See* Doc. 1, ¶ 35. Thereby, Wadsack has failed to meet the pleading standards under Fed. R. Civ. P. 12(b)(6). *See Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783–84 (9th Cir. 2001) (reasoning that conclusory allegations are insufficient to state a claim of conspiracy).

For these reasons, this Court should find that Wadsack has failed to establish the elements of conspiracy and dismiss this claim as to all Defendants.

**4.    No Constitutional Violation of Equal Protection.**

Wadsack's allegation that she was denied equal protection as a woman or a legislator is pled in a legally conclusory manner without any supporting facts. "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013). The mere formulaic recitation of an element of an equal protection claim does not suffice to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. Wadsack has to allege specific facts about specific individuals from which it could be determined that these individuals were similarly situated to her.

Wadsack provides no evidence that plausibly connects any of the Defendants' actions to Wadsack's sex. Wadsack's claim further fails because there are no facts regarding other similarly situated persons who were treated differently than her (i.e., another male or non-legislator who was speeding or did not have insurance and was not cited). Therefore, she is not entitled to relief under the Equal Protection Clause. Based on these deficiencies, the Police Defendants are entitled to qualified immunity.

5. **<u>No Clearly Established Law.</u>**

As to the second prong of the qualified immunity analysis, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft*, 563 U.S. at 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "At bottom, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Saucier*, 533 U.S. at 202. The Plaintiff bears the burden of showing that the right at issue was clearly established. *Kramer v. Cullinan*, 878 F.3d 1156, 1164 (9th Cir. 2018). "In the Ninth Circuit, we begin [the clearly established] inquiry by looking to binding precedent. If the right is clearly established by decisional authority of the Supreme Court or this Circuit, our inquiry should come to an end." *Moore v. Garnand*, 83 F.4th 743, 750 (9th Cir. 2023) (quoting *Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004)).

Wadsack will be unable to provide this Court with a Ninth Circuit or Supreme Court case law clearly establishing a First Amendment or Fourteenth Amendment right to be free from police officers issuing traffic citations for speeding and failure to provide proof of car insurance, prohibiting police officers from communicating with the media about traffic tickets involving legislators, or prohibiting police officers from filing criminal complaints against political critics who are speeding.

Indeed, there is precedent that would cause a reasonable police officer to believe their actions were constitutional. *See Snowden v. Hughes*, 321 U.S. 1, 6–7 (1944) (there is no property interest in an elected position); *Kaylor v. Fields*, 661 F.2d 1177 (8th Cir.1981) (not allowing claims for defamation under § 1983 when the allegation is loss of an election due to allegedly defamatory statements) (citing *Paul v. Davis*, 424 U.S. 693 (1976); *Flinn v. Gordon*, 775 F.2d 1551 (11th Cir.1985) (same); *Awabdy*, 368 F.3d at

1069 (no substantive due process right to be free from prosecution without probable cause) (citing *Albright v. Oliver*, 510 U.S. 266, 268, 271 (1994)); *Patterson v. Pima Cnty. Sheriff's Dep't*, No. CV-13-01779-TUC-RM E, 2014 WL 5792941, at *4 (D. Ariz. Nov. 6, 2014) (no clearly established right for Arizona legislators to be immune from service of process).

Because Wadsack cannot show that the Police Defendants committed a constitutional violation or that the law was clearly established at the time of their alleged actions, this Court should dismiss Wadsack's claims against the Police Defendants based on qualified immunity.

**6.  Failure to state a claim against Police Defendants in their official capacities.**

This Court should dismiss the Police Defendants as defendants in their official capacities as police officers of the City of Tucson because such claims are duplicative of the claims against the City. Courts "treat a claim against a government officer in her official capacity as a claim against the employing entity." *R. W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1222–23 (9th Cir. 2023) citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Thus, this Court should dismiss the claims against the Police Defendants in their official capacities.

**7.  Failure to plausibly allege that Chief Hall and Captain Hand caused or were personally involved in a constitutional violation.**

This Court should dismiss Chief Hall and Captain Hand as defendants in their individual capacities because, as supervisors, they cannot be vicariously liable under § 1983 for their employees' acts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). "An official may be liable as a supervisor only if either (1) he or she was personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018); *see also Ortez v.*

*Washington County, Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (affirming dismissal where plaintiff failed to allege that supervisors knew of or participated in the alleged violations).

The Complaint only mentions Chief Hall and Captain Hand briefly and vaguely, saying that they met with Captain Pettey to acknowledge that Wadsack had legislative immunity and should not have been stopped (Doc. 1, ¶ 20), and that, "upon information and belief," Chief Hall and Captain Hand "leaked" unidentified information to unidentified "press" (Doc. 1, ¶ 35); but the Complaint does not say to whom they leaked information, what information was leaked, when it was leaked, how it was leaked, or what connection it had to Wadsack's criminal prosecution. Because Wadsack failed to allege that Chief Hall and Captain Hand were personally involved in the incident and failed to set out a sufficient causal connection between the incident and Chief Hall's and Captain Hand's conduct, she failed to allege that Chief Hall and Captain Hand violated the Constitution. Therefore, Wadsack fails to state a supervisory-liability claim against Chief Hall and Captain Hand, and this Court should dismiss them as defendants in their individual capacities.

**8.     Failure to plausibly allege a State Action.**

Wadsack's claims regarding the Defendants' communication to the media are akin to a defamation claim. She alleges that she was damaged by the media coverage of her traffic citation, and further damaged when voters did not vote for her in the Republican primary. Wadsack does not allege that the media or voters were acting under the color of state law.

Wadsack is seeking recovery based not on direct governmental action that prevented her from winning the Republican primary, but on the decisions of third parties (voters and the media) in reaction to "information" "leaked" by TPD. This is the same argument the court rejected in *WMX Techs., Inc. v. Miller*, 80 F.3d 1315 (9th Cir. 1996) *on reh'g en banc*, 104 F.3d 1133 (9th Cir. 1997).

1    Wadsack cannot sue the Defendants for claims akin to defamation under § 1983. In *WMX*, the San Diego County Board of Supervisors authorized the district attorney to investigate rumors about WMX's alleged connections to organized crime and other possible improprieties. 80 F.3d at 1318. The district attorney conducted the investigation and disclosed it to the press. *Id.* WMX alleged § 1983 claims, stating the press report deprived them of reputational and business goodwill. *Id.* The court held that WMX failed to allege that state actors were responsible for the reputational harms. *Id.* at 1319. The court reasoned that although the district attorney and Board of Supervisors were state actors, WMX complained only of reactions of third parties to the state actors' actions, not any actual, direct interference with WMX's reputation by state actors by, for example, direct statements made directly by the state actors, and direct interference by state actors. *Id.* at 1319, 1320 (distinguishing the facts in *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310 (9th Cir.1989). The court went on to say that § 1983 does not permit plaintiffs to bring a claim against state actors that is akin to defamation. The court concluded that claims akin to "defamation" must be "accompanied by an injury directly caused by the Government, rather than an injury caused by the act of some third party." *Id.*

Similarly, the Police Defendants were not directly involved in the Republican primary. They did nothing to prohibit Wadsack from being on the ballot or running for election. TPD's alleged action of "leaking" information to the press did not cause Wadsack to lose the Republican primary. Wadsack does not allege that TPD had control over what the press chose to write or publish. Furthermore, voters' reactions to such publications were outside the control of TPD. Accordingly, this Court should find that because Defendants lacked any direct involvement with the Republican primary and potential voters, there is insufficient state action on which to base a claim.

C.   **Failure to state a Monell claim.**

First, this Court should dismiss Counts I – III against the City. The City can be held liable for the constitutional violations of its employees only through the Monell claim

1  at Count IV. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–94 (1978). To the extent Counts I – III are intended to be Monell claims against the City, they are duplicitous of Count IV and should be dismissed.

Wadsack's allegation that the single unconstitutional incident described in the Complaint constituted a municipal policy or custom, without claiming that it was a policy traceable directly to a policymaker or a widely recognized practice, must ultimately fail. The City of Tucson may not be sued under § 1983 solely because an injury was inflicted by one of its employees. *Long v. Cty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006); *Monell*, 436 U.S. at 690–94. Wadsack must allege that the Police Defendants deprived her of a constitutional right, and the City had a policy or custom that led to this deprivation. *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)

As outlined above, Wadsack has failed to allege that she was denied her constitutional rights. Therefore, this Court should conclude that no underlying constitutional violation occurred and should dismiss the Monell claim against the City. If the Court continues its analysis, it should find that Wadsack failed to plausibly allege a policy or custom that led to the denial of such rights.

Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents"). Even if there is no policy, a plaintiff may establish municipal liability by showing that a permanent and well-settled custom of the municipality gave rise to the alleged constitutional violation. *See Gordon v. County of Orange*, 6 F.4th 961, 974 (9th Cir. 2021). An act performed pursuant to widespread custom need not have "been formally approved by an appropriate decision maker ...," *Board of Comm'rs of Bryan Cty. v.*

1  *Brown*, 520 U.S. 397, 404 (1997), although proof of random acts or isolated incidents is
2  insufficient to establish a custom. *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996).

3       Wadsack has attempted to establish the existence of a municipal policy or custom
4  based solely on a single incident of unconstitutional action by non-policymaking
5  employees. The Complaint alleges the City has an "express official policy, or
6  longstanding practice or custom" to, in summary, not properly utilize radar guns and
7  evidence generated from radar guns. *See* Doc. 1, ¶ 88. Wadsack's allegations regarding
8  radar gun utilization are insufficient to establish a custom because they are conclusory
9  and lack supporting facts that make it plausible that the City had a single other instance
10 of radar gun misutilization, let alone that the City has a widespread practice of
11 misutilizing radar guns. Wadsack fails to provide any supporting facts – such as how
12 many times this has happened, whether misutilization of radar guns has resulted in unjust
13 outcomes, or whether Officer Schrage has previously misutilized his radar gun – that may
14 otherwise support the conclusion that the City knew or should have known that a
15 constitutional violation was "substantially certain to result." *Castro v. Cnty. of Los*
16 *Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016).

17      Absent the allegations of her own isolated experience, Plaintiff alleges – at most –
18 that "upon information and belief," the City has an unconstitutional custom or policy.
19 Doc. 1 at ¶¶ 87, 88, 90, 91. This is just a bare legal conclusion and is insufficient to
20 establish a plausible claim for Monell liability based on an unofficial custom or practice.
21 As the Ninth Circuit has cautioned, "[w]hen one must resort to inference, conjecture and
22 speculation to explain events, the challenged practice is not of sufficient duration,
23 frequency and consistency to constitute an actionable policy or custom." *Trevino*, 99 F.3d
24 at 920. Wadsack alleges nothing demonstrating that either Chief Hall or Captain Hand
25 (the alleged policy makers, *see* Doc. 1, ¶ 7) ratified a subordinate's decision and the basis
26 for it, and had knowledge of the alleged constitutional violation and actually approved it.
27

In fact, the Complaint alleges that Chief Hall and Captain Hand acknowledged that Wadsack had legislative immunity and should not have been stopped. Doc. 1, ¶ 20.

Furthermore, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy "in *that area* of the city's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S. Ct. 915, 924, 99 L. Ed. 2d 107 (1988) (citations omitted) (emphasis in original). Wadsack does not allege that Chief Hall and Captain Hand create policies that dictate which cases the City will prosecute. Indeed, policymaking designations are founded in state law, and no Arizona law designates a police assistant chief or a police captain as an official who may create prosecutorial policies.

Thus, Wadsack's Monell claim fails and should be dismissed.

**WHEREFORE**, Defendants respectfully request that this Court grant relief as follows:

a. Dismissing Plaintiff's Complaint as to the Police Defendants and the City of Tucson with prejudice;

b. Entering judgment in favor of the individual Defendants and the City of Tucson and against Plaintiff for attorneys' fees and costs; and

c. Such further and other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED: June 3, 2025.

GUST ROSENFELD P.L.C.

By: */s/ Joseph D. Williams*
Joseph D. Williams
Peter Collins, Jr.
*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was transmitted this June 3, 2025 to the Clerk's Office using the CM/ECF System for filing and a transmittal of same to the CM/ECF Registrant:

Dennis I. Wilenchik
David N. Ferrucci
Wilenchik & Bartness, P.C.
2810 N. Third St.
Phoenix, AZ  85004
diw@wb-law.com
davidf@wb-law.com
admin@wb-law.com

By: */s/ Jackie Clark*