**WILENCHIK & BARTNESS**
— A PROFESSIONAL CORPORATION —

ATTORNEYS AT LAW
The Wilenchik & Bartness Building
2810 North Third Street  Phoenix, Arizona  85004

Telephone: 602-606-2810   Facsimile: 602-606-2811

Dennis I. Wilenchik, #005350
admin@wb-law.com
*Attorneys for Plaintiff Justine Wadsack*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Justine Louise Wadsack,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>City of Tucson, a municipal corporation; Ryder Schrage, both in his personal and official capacity as a City of Tucson police officer; Lauren Pettey, both in her personal and official capacity as a City of Tucson police officer; Kevin Hall, both in his personal and official capacity as a City of Tucson police officer; Frank Hand, both in his personal and official capacity as a City of Tucson police officer; Jane Doe Schrage; John Doe Pettey; Jane Doe Hall; Jane Doe Hand; John Does 1-10 and Jane Does 1-10; and ABC Corporations 1-10,<br><br>　　　　　　　Defendants. | Case No.: 4:25-cv-00145-TUC-JGZ<br><br>**PLAINTIFF JUSTINE LOUISE WADSACK'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |

## I. INTRODUCTION

Defendants plotted to destroy a promising legislator's career by setting up false charges against her, making sure they were publicized, and then endorsing Plaintiff's male opponent who won the race. Defendants' took these actions discriminating against Plaintiff and as punishment for Plaintiff's criticism against the department. Adding insult to injury, Defendants characterized this as a political charade. The gravamen of this action is that Defendants acted with an improper purpose and not to secure justice—this is not a political charade. When Plaintiff was pulled over, she communicated she was in a hurry, but this is not an admission that she was speeding. Defendant Schrage also told Plaintiff he based her speeding off his radar gun, which is contested.

## II. ARGUMENT

In considering a F.R.C.P. 12(b)(6) motion to dismiss, the complaint must contain enough factual content to raise a reasonable expectation that discovery will reveal evidence of the claim, and the court must accept the well-pleaded factual allegations as true and draw all reasonable inferences in the light most favorable to the plaintiff. *See Radix Law PLC v. JPMorgan Chase Bank NA*, 508 F.Supp.3d 515 (2020); *ThermoLife Int'l, L.L.C. v. NeoGenis Labs, Inc.*, 411 F.Supp.3d 486, 517 (2019). The Supreme Court has also encouraged liberal pleading requirements where a complaint need not set out in detail the facts upon which Plaintiff bases her claim. *See c.f. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). In response to Plaintiff's Complaint, Defendants have raised qualified immunity as an affirmative defense and have relied upon additional evidence beyond the Complaint to support their motion, which should be disregarded at this stage. Assuming the truth of Plaintiff's allegations, Defendants' motion should be denied.

### A. Under the Facts Alleged, the Police Defendants Are Not Entitled to Qualified Immunity

Government officials performing discretionary functions are entitled to a qualified immunity unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Determining whether officials are owed qualified immunity involves two inquiries: (1) whether,

taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *See Krainski v. Nevada ex. rel. Bd. Of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 970 (9th Cir. 2010). The relevant inquiry is whether a reasonable officer could have believed the alleged conduct was lawful in light of clearly established law and the facts of the case. *See Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir. 1988). Taking the totality of circumstances alleged here NO REASONABLE officer of person could believe they were not violating clearly established constitutional rights by framing a legislator, charging her despite her immunity, timing it right before the election and making sure it was publicized while backing her opponent and trying to oust her from office so her investigations of them were quelled. While qualified immunity may be established as a matter of law by the lower court on a motion to dismiss where facts are not in dispute, where, as here, there are triable issues of fact regarding a reasonable belief that an arrest is not lawful, these issues are for the jury to determine. *See id.,* (finding whether a search was lawful was fact-specific and for a jury to determine whether qualified immunity applied).

It appears that Defendants argue state actors were not responsible for the harms alleged. But, obviously we disagree. They were acting under color of state law and if there is a factual issue as to that, it is not to be resolved as a matter of law here. Plaintiff, quite clearly pled Defendants' conduct violated constitutional rights afforded under both Amendments I and XIV of the United States Constitution, depriving Plaintiff of privileges and immunities guaranteed to all citizens of the United States—these rights were thus clearly established at the time that Defendant Schrage pulled Plaintiff over knowing she was subject to immunity, knowing he had no probable cause to do so, and worse- bad cause- and further issuing her a citation four months later at other Defendants' instruction, for criminal speeding only relying upon his falsified observations, and for improper and unlawful purposes. This conspiracy was furthered when Defendant Pettey called Plaintiff to issue the citation only shortly after Plaintiff began to investigate the Tucson Police Department. Defendant Pettey then ordered Defendant Schrage to

draft a criminal complaint after the department at the same time leaked the impending criminal charges maliciously to the press to affect adversely Plaintiff's impending election. Plaintiff pled that Defendant Schrage did not stop Plaintiff with any reasonable basis, knowing she was entitled to immunity, and without any proof of speeding. Now, ironically, Defendants plead for immunity for themselves. Defendant Pettey further reported and disseminated false statements allegedly made by Plaintiff, albeit contested, for no good reason other than to harm Plaintiff, which were unrecorded against office policy, after assuring Plaintiff at the time they were being recorded to preserve the conversation. Again, only to further harm Plaintiff by making false assertions of what Plaintiff supposedly stated. Defendants Hall and Hand oversaw this behavior and disseminated or approved this information being provided to the general public and allowed the malfeasance within their department, against policy. Defendants have now asserted qualified immunity as an affirmative defense for the police defendants and argued the Monell doctrine notwithstanding. However, after taking all facts alleged in favor of Plaintiff, there are, at a minimum, triable issues of fact and reasonable minds can differ for the jury to resolve.

### 1. Defendants' Conduct Amounts to Fourteenth Amendment Violations, Which are Sufficiently Pled

Generally, if a Plaintiff alleges defendants engaged in malicious conduct to deprive her of her constitutional rights to free speech, due process and equal protection, and immunities afforded her as a state senator, and the proceeding terminates in her favor, she has stated a claim for malicious prosecution under § 1983 with respect to First and Fourteenth Amendment violations of the U.S. Constitution. *See Awabdy v. City of Adelanto*, 363 F.3d 1062, 1070 (9th Cir. 2004). In *Awabdy*, the Court found that the complaint raised claims that city officials made false accusations and conspired, with the result that criminal proceedings were thus wrongfully initiated to discourage political activity and other First Amendment conduct by a citizen, there due to her ethnicity, in violation of her Fourteenth Amendment right to equal protection. *See id.* at 1071. The Plaintiff in *Awabdy* did not pursue a selective prosecution claim, but argued the charges against him were entirely false. *See id.* at 1072. Thus, in order to prevail on the Fourteenth Amendment

4

claim, he only needed to prove the officials purposefully caused the state to institute proceedings against him because of his race or ethnicity, and NOT that similarly situated members of the other, majority groups, were treated differently. *Id.* Here, similarly, proceedings were instituted to deprive Plaintiff of her right to freely speak as a woman and legislator against the Tucson Police Department and City, in her official capacity as an elected official.

Defendant Pettey also said that the Tucson Police Department has never before held charges against someone like Plaintiff until the legislative session ended, or had any policy to do so, despite now apparently claiming otherwise and that department policy was followed. We contend the law does not allow for any prosecution of charges being submitted then or after the legislative session ends for conduct immunized at the time of the alleged infraction. In any event, we contend the Defendants conspired to single out Plaintiff by doing so under color of state law for an improper and unlawful purpose. Plaintiff, a woman, and legislator, had the right to equal protection under the Fourteenth Amendment to not be charged for an alleged offense occurring during session, and that she was treated differently than similarly situated members. We are unaware of any other similarly situated legislator being charged post session for an offense allegedly occurring during session, nor are we aware of anything in the law allowing such a matter to be charged or brought to a prosecutor for charging under similar circumstances. Plaintiff has alleged that Defendants instituted delayed proceedings against her because of her gender and position and as evidenced by their intended motivation to influence her election by use of leaked and deliberately untimely falsified reports to the media and concomitant endorsement of her male opponent. Plaintiff pled sufficient facts to state claims for malicious prosecution where Defendants prosecuted her with malice and without probable cause, and did so denying her equal protection and violating her freedom of speech. Not once do Defendants contest malice by their motion.

  **a. The Issue of Probable Cause Goes to a Jury**

Hypothetically, an officer's visual estimation of a vehicle's speed can provide reasonable suspicion for a traffic stop if he is trained to accurately estimate speed, and so testifies

foundationally as such. That did not happen here. Mere observations later testified to post hoc, claimed many months later do not have the smell of justifiable probable cause, because there was none. *See e.g. U.S. v. Cruz-Castro*, 378 Fed.Appx. 632, 634 (9th Cir. 2010)(finding probable cause where trooper testified he visualized speed as confirmed with radar); *State v. Moran*, 307 P.3d 95, 98 (Ct. App. Ariz. 2013)(finding mere observation estimating speed justified stop under reasonable suspicion after officer's testimony about training in this regard). Even reasonable suspicion is lacking in this case as Plaintiff's placard on her license plate clearly delineated her immunity before any stop. The question of probable cause is generally one for the court; however, if the "[e]vidence is conflicting, so that on one conclusion as to the facts drawn therefrom probable cause exists, while from another it does not, it is then for the jury to determine the true state of facts and to apply the law as laid down by the court to those facts." *See Donahoe v. Arpaio*, 986 F. Supp.2d 1091, 1104 (D. Ariz. 2013)(quoting *Sarwark Motor Sales, Inc. v. Woolridge*, 88 Ariz. 173, 177 (1960)). Lack of probable cause may also serve as evidence of improper purpose or malice. *See Donahoe v. Arpaio*, 986 F.Supp. at 1107.

Defendants have not disputed malice in their motion but argue that Plaintiff's malicious prosecution claim fails somehow, because they established probable cause in their criminal complaint. Frankly, that is absurd. Plaintiffs do not establish probable cause by claiming it. It is obvious that there is conflicting evidence alleged for purposes of this Complaint sub judice that there was a lack of probable cause, and taken in the light most favorable to Plaintiff, there is no probable cause where the evidence shows that Defendant Officer Schrage pulled over Plaintiff knowing that she was immune from traffic infractions, and falsely and conclusory claimed she was speeding solely based on what he later says was his observations. Particularly so where the prosecution does not proceed and is terminated in Plaintiff's favor. There has been no evidence presented in that proceeding that there was a radar gun to corroborate the speed, or any detail at all as to how Plaintiff's speed was gauged, and certainly nothing preserved for purposes of disclosure in the underlying proceeding. In fact, it is alleged that there was no radar gun used at all. There is no evidence of what speed limit Plaintiff was going, that Officer Schrage had any

training in this regard, and no admissions by Plaintiff that she was speeding. The only evidence is that Defendants boldly claim that Plaintiff was criminally speeding despite termination of the criminal complaint in Plaintiff's favor, based seemingly on Defendant Schrage's dilatory alleged observations, which Plaintiff contests by her very Complaint. Thus, there is a disagreement on evidence presented at a minimum, to be generous to Defendants, where there is no probable cause shown, and this remains an issue for the jury to decide at worst.

Defendants' argument regarding proof of insurance holds no merit either, as this citation should not have been issued without reasonable suspicion for the stop and without probable cause at all to issue any criminal citation, to stop Plaintiff or demand proof of insurance. Defendant Schrage would not have been able to ask for proof of insurance without any alleged false accusations regarding criminal speed to begin with. He had no prior basis to stop Plaintiff to check her insurance. The notion is absurd. The Complaint further alleges that Defendant Pettey spoke to Plaintiff in an unrecorded phone call, in violation of policy, falsely claiming it was recorded, and claimed to have quoted her with false information in her report, conveniently close in time to when Plaintiff pledged to investigate the police, and then leaking the alleged statements of Plaintiff which were falsely claimed to the press. Despite speaking to Plaintiff and hearing that Defendant Schrage had no evidence for his charge, Defendant Pettey blindly told him to then proceed with charges, knowing they were false, untimely, unique, and failing to further investigate the truth. While doing so, Defendants leaked this information to the media, to further humiliate Plaintiff in retaliation for her free speech and with animus towards her as a woman candidate in opposition to the male candidate they sought to have elected instead, then they endorsed and helped him win that election for their benefit, by virtue of their scheme to defame and destroy Plaintiff's political career and aspirations with their malicious and false accusations of criminal conduct. Frankly, it is hard for anyone to understand how such conduct would not be the subject of civil claims made to try to restore Plaintiff's dignity and reputation.

    **b. Plaintiff May Pursue a Malicious Prosecution Claim against Police Officers**

"A criminal defendant may maintain a malicious prosecution claim not only against

prosecutors but also against others—including police officers and investigators—who wrongfully caused his prosecution." *Smith v. Almada*, 640 F.3d 931, 938 (9th Cir. 2011). The police defendants cannot be shielded from liability for a Section 1983 claim when their knowing or recklessly false statements lead to the prosecution (i.e., of their false charges). *See Awabdy v. City of Adelento*, 368 F.3d at 1067-68. *See also Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126-27 (9th Cir. 2002)(holding that plaintiff's allegations that a coroner's knowingly or recklessly false statements led to his arrest and prosecution were sufficient to state a Section 1983 claim). Thus, a probable cause determination "that is 'tainted by the malicious actions of the government officials [involved]' does not preclude a claim against the officials involved." *Harris v. Roderick*, 126 F.3d 1189, 1198 (9th Cir. 1997). In *Awabdy*, the Court found that if Plaintiff was able to prove that defendants' knowing and false accusations and other similarly conspiratorial conduct were instrumental in causing the filing and prosecution of criminal proceedings the claim was actionable against them. 368 F.3d at 1067-68.

First, there is no probable cause here to set someone up with false charges, or at minimum, there is fact-specific inquiry that behests a jury to decide that. Second, as alleged in the Complaint and taking all factual allegations in the light most favorable to Plaintiff, Plaintiff has alleged that the police officer defendants made false statements, which led to charging Plaintiff with a criminal misdemeanor in conspiracy to cause such charges to be brought close to Plaintiff's election and to leak this information directly to the media to help defeat her because she was a woman and a problem for them. The criminal speeding violation should never have been furthered for prosecution after the session ended, but instead, supervisory Defendants allowed and encouraged the charge then based on known falsities and irregularities that could conveniently also not be corroborated by any independent evidence. Close in time to when Plaintiff made it known she would investigate police, and then to the election, based on her political affiliations and gender. Defendants made it known to the public that Plaintiff was going to be criminally charged, which virtually sealed the election soon after for Plaintiff's political opponent, a male that was trailing significantly in the polling. It was within the police defendants' power not to cause charges against

Plaintiff during or after the legislative session; however, they made a conscious decision to bring forth these unprecedented charges four months later, and to release this information to the media knowing that these charges were based on false information and would not be resolved before the impending election. When asked about their reasoning for then bringing charges when never having done so before, and whether this was commonplace, Plaintiff Pettey responded that it was not, and happened only to Plaintiff. Plaintiff has alleged sex based discrimination and a violation of her freedom of speech, and in retaliation for her known opposition to Defendant Tucson and the police department, she was criminally charged and maligned, and the police department endorsed the male candidate running against her. There is more than sufficient facts and evidence alleged to sustain proceeding further.

    **c.  Plaintiff Has Sufficiently Pled that Defendants Violated the First Amendment**

The case law is very clear that an arrest, even supported by probable cause, which this arrest was not, but made in retaliation for protected speech, violates the First Amendment. *See Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022)(citing to *Skoog v. County of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006); *Ford v. City of Yakima*, 706 F.3d 1188, 1194-95 (9th Cir. 2013)). Protected speech clearly includes a state senator asserting an intent to investigate Defendants in her official capacity. No citation of authority was provided by Defendants to the contrary. However, it is worse. Here, there is no probable cause for the arrest as alleged.

Defendants' reliance on *Nevada Com'n on Ethics v. Carrigan*, 564 U.S. 117 (2011) for the supposition or insinuation that Plaintiff's speech is not protected due to her political affiliation is off base; we have not alleged Plaintiff's political affiliation is the issue at all. *Carrigan* is really about how a legislator's vote itself is not protected speech, which is equally inapplicable here. It is clear that a politician's speech is protected by the First Amendment. *See Boquist v. Courtney*, 32 F.4th 764, 780 (9th Cir. 2022)("In light of '[t]he manifest function of the First Amendment in a representative government; and the 'require[ment] that legislators be given the widest latitude to express their views of policy,' we conclude that an elected official's speech is protected regardless

whether the official is speaking 'as a citizen upon a matter of public concern.'") (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)).

As for retaliatory conduct in response to such speech, the Supreme Court in *Nieves v. Bartlett* clarified that while probable cause to arrest generally defeats a claim that an arrest was in retaliation for speech protected by the First Amendment, (here there was none) an exception also exists where a plaintiff can present objective evidence that similarly situated individuals not engaged in the same protected speech were not arrested. 587 U.S. 391, 407 (2019). Where, as here, there is no probable cause to arrest established, even if there was, the police made clear to Plaintiff that no one else who had immunity had ever been cited for criminal charges after the session ended, as she was.

In her complaint, Plaintiff has alleged that she was investigating the Tucson police, was an outspoken critic of the Tucson City government, and she was supporting two bills in the legislature that would have affected the Tucson Police Department. It does not take a rocket scientist to understand this certainly could be a motivation to remove her from office no matter how they did so. Notably, *Plaintiff was investigating police over a constituent reporting harassment by the Tucson Police Department*. Plaintiff has alleged that the exercise of her speech or commentary against the Tucson Police Department and the city was the principal motivation for her later arrest to oust her from office by whatever means they saw as being available to them. Before police released her criminal citation to the media, and before Defendant Pettey filed her false police report claiming she called Plaintiff to arrange a time to have Plaintiff sign her citation, Plaintiff was supposed to meet with the Tucson Police Department's Chief over these harassment allegations. It is obvious to anyone, that there was a substantial causal relationship between the protected activity—investigating police and speaking out against the city—and the adverse action, issuing a criminal citation to Plaintiff four months after it occurred despite her immunity for it. The fact the events are close in time gives rise to a presumption that the actions taken were in retaliation for Plaintiff's speech. Further, receiving a criminal citation in response to Plaintiff's speech would chill any person in engaging in further activity. But, then releasing the false

information to the media was the coup de grace to insure retribution for the exercise of her rights and duties as a state senator and citizen.

### d. Plaintiff Has Sufficiently Pled Conspiracy, and the Intracorporate Doctrine Does not Apply

In *Cohen v. Norris*, Plaintiff brought a § 1983 action against police officers and the city of Los Angeles. 300 F.2d 24, 26 (9th Cir. 1962). The Court stated: "it is permissible to state a civil cause of action for conspiracy, based on § 1983." *See id.* However, while the Court referenced that the use of conspiracy could be considered surplusage as it is not required under § 1983, the Court never said conspiracy is not a valid claim as well. *See id.* at 33. Defendants can conspire with one another to commit constitutional violations.

Where Defendants have only argued that an entity cannot conspire with its individual Defendants, Defendants have not addressed whether the individual Defendants could conspire with one another to violate a Plaintiff's civil rights. Of course, they can. Entities do not conspire as such. People do. Where Defendants argue that the City of Tucson cannot conspire with the individual Defendants, it is clear from case law that individuals do, and this is proper pleading.

### e. Plaintiff Has Sufficiently Pled a Violation of the Equal Protection Clause

To state a claim under § 1983 for a violation of the Equal Protection Clause, a plaintiff must demonstrate that defendants acted with intent or purpose to discriminate against the plaintiff based on membership in a protected class. *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The complaint must plead sufficient facts to raise a plausible inference that Defendants acted with "discriminatory intent" based on Plaintiff's sex. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (2009). Those facts are pled here.

The Defendants' sole basis for arguing that Plaintiff's Fourteenth Amendment claim should be dismissed is that it was pled without supporting facts. But, what other "facts" could be pled here unless we have a confession, which discovery may indeed provide. We know of no other reasons for Plaintiff being discriminated against to favor a male opponent other than the concomitant fact that such female legislator also was investigating the police at the same time,

both of which would suffice as motives to seek charges and publicize them close to her election. Plaintiff pled that she was discriminated against based on her sex, a protected class. The facts that support this, again, are that the Tucson Police Department endorsed a male candidate, her opponent, after she was criminally charged based on false allegations. Defendant Pettey told Plaintiff that she was the only person who was criminally charged after her legislative session was over, despite having no reason, precedent or basis to do so. While being a woman is not the only animus, it does not need to be. Defendants also retaliated against Plaintiff for her speech. Plaintiff was deprived of her rights to the equal protection of the laws guaranteed by the Fourteenth Amendment and deprived of her right to petition the government for redress of grievances by the phony prosecution, of freedom of speech, and to hold public office in violation of the First Amendment as well.

### f. Plaintiff Has Satisfied the Second Prong of the Qualified Immunity Analysis

A court can only dismiss a complaint based on qualified immunity if it is clear from the complaint that the plaintiff can present no evidence to overcome the defense. *See Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). Of course, we can and have. Where officials are forced to go to trial because their right to immunity turns on the resolution of disputed facts, early determination is not possible. *See Sloman v. Tadlock*, 21 F.3d 1462, 1468 (9th Cir. 1994). Under the second prong of qualified immunity, it is well known case precedent that an arrest even supported by probable cause but made in retaliation for protected speech still violates the First Amendment. *See Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022)(citing to *Skoog v. County of Clackamas*, 469 F.3d 1221, 1235 (9th Cir. 2006); *Ford v. City of Yakima*, 706 F.3d 1188, 1194-95 (9th Cir. 2013)). A right can be clearly established despite a lack of factually analogous preexisting case law, and officers can be on notice that their conduct is unlawful even in novel factual circumstances. *See Karl v. City of Mountlake Terrace*, 678 F.3d 1062, 1073 (9th Cir. 2012). The relevant inquiry is whether, at the time of the officers' action, the state of the law gave the officers fair warning that their conduct was unconstitutional. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "Police officers have been on notice at least since 1990 that it is unlawful to use their authority to

retaliate against individuals for their protected speech." *Ford*, 706 F.3d at 1195. We would hope no citation of authority would be required to establish to Defendants that it is unlawful conduct setting up a phony charge with false and untimely actions and information for the purpose of destroying someone's career for one's own benefit, particularly "law enforcement". In *Sloman v. Tadlock*, the Ninth Circuit found sufficient evidence that police officer's actions in warning, citing and arresting a supporter of a ballot measure were improperly motivated by the officer's opposition to the supporter's political beliefs. 21 F.3d at 1468. Witnesses testified that the conduct chilled the supporter's political speech, which supported the imposition of liability for violating the supporter's constitutional rights. *See id.* Also, it has been held that "[A]n interviewer who deliberately mischaracterizes witness statements in her investigative report … commits a constitutional violation." *Costanich v. Dept. of Social and Health Svs.*, 627 F.3d 1101, 1111 (9th Cir. 2010). In *Spencer v. Peters*, where individuals alleged that the police made false quotes in their reports, the jury was allowed to resolve the factual dispute by way of a credibility determination. 857 F.3d 789, 798 (9th Cir. 2017).

    Respectfully, our defendants neglect to understand that taking all of the facts pled in the complaint, as a whole, and not just individually, can be used as support to prove Defendants' conduct was in totality a violation of Plaintiff's constitutional rights and Defendants should have been aware of this as clearly established. Their deliberate indifference to Plaintiff's constitutional rights is for a jury, not the Defendants, fortunately to decide. It is clear that retaliating against Plaintiff due to her speech, discriminating against her based on her gender, falsifying records, knowingly disseminating false information, all for an improper purpose as alleged, are all acts Defendants should have clearly been aware of were in violation of Plaintiff's protected rights. Defendants knew that deliberately waiting four months to take wrongful and false actions against Plaintiff, so near to the election, and disseminating it to the press to insure her loss to a male opponent, who they would endorse, and who would not have any animus to them, was a violation of clearly established rights and was done deliberately and maliciously. Of course, Defendants

leave out crucial factors that have been pled such as Plaintiff's speech and gender as causing animus and as motivations for Defendants' actions.

### g. **Plaintiff can Plead Claims Against Police Defendants in Their Official Capacities and the City of Tucson as well**

A suit against an individual in their official capacity is treated as a suit against the entity that employs the individual, and the real party in interest in an official-capacity suit is the entity itself, not the named individual. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *Lewis v. Nanos*, 766 F.Supp. 905, 926 (D. Ariz. 2024). The entity that employs the individual defendants is the Tucson Police Department. There is no authority cited precluding Plaintiff from naming Defendants in their individual official capacities, and the City of Tucson as well.

### h. **Plaintiff Sufficiently Pled that Chief Hall and Captain Hand Are Liable Under Supervisory Authority Pursuant to § 1983**

If a supervisor knew of and acquiesced in unconstitutional conduct by their subordinates, they can be held liable under Section 1983. *See Starr v. Baca*, 652 F.3d 11202, 1207-08 (9th Cir. 2011). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for the conduct that showed a reckless or callous indifference to the rights of others." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998). We alleged these Defendants were.

Defendant Officer Frank Hand is a retired Captain and Defendant Kevin Hall is an assistant chief. Both are claimed responsible for implementing, sanctioning, or condoning policies where Plaintiff has alleged officers and a Lieutenant made false accusations to charge Plaintiff with a criminal misdemeanor and besmirch her political image and career as punishment for her lack of support for the Tucson Police Department as well as her affirmative promises to hold it accountable for its prior actions in her official capacity as State Senator. In a police department, the hierarchy is that of assistant chief over a lieutenant, and a police captain manages specific divisions within the department while also making sure officers are complying with department

policies and standards. As further alleged in the Complaint, both Chief Hall and Captain Hand upon information and belief, leaked information to the media or had knowledge in this regard about Plaintiff's criminal violation, based on knowing false allegations and knowing that Plaintiff had immunity, but allowing her to be charged anyway. Both Chief Hall and Captain Hand communicated with the press as spokespeople on behalf of the department and with regards to Plaintiff's criminal violation based on known falsities or reckless disregard for the truth. Both Chief Hall and Captain Hand allowed false information to support a criminal charge, which was cited four months after they knew Plaintiff was immune from such an offense. They further let media know they intended to charge Plaintiff and this was fueled by Plaintiff's gender and in retaliation for her political speech.

### i. **State Action**

If Defendants are arguing that the Defendants are not the proper parties, it is unclear who would be. But, this is incorrect. Defendants do not contest whether Defendants were acting under color of state law, but deflect by saying that the media or voters damaged Plaintiff because of Defendants' defamation. If Plaintiff is required to amend to allege this, it will. But, Defendants were all acting under color of state law when committing deliberately indifferent constitutional violations. Plaintiff will only clarify that this is not a defamation claim, but the evidence that Defendants leaked false information to media outlets is a part of their deliberate indifference to Plaintiff's constitutional rights. Defendants were all unequivocally acting as state actors in their roles in furtherance of the conspiracy against Plaintiff.

### j. **Plaintiff Sufficiently Pled a Monell Claim**

In a Section 1983 claim, a city cannot be subject to liability unless the harm was caused in the implementation of "official municipal policy." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (2018). It appears the City had a policy to charge state senators after the session ended. If not, then the individual defendants were acting without any such authority in their conduct. But, we have pled they were acting under color of authority condoned by the City policies at this time. The Court can assume an arrest is pursuant to an official city policy. *See*

*Lozman v. Riviera Beach*, 585 U.S. 87, 88 (2018). Customary practices, if widespread among police employees, are a sufficient basis for municipal liability. *See Sloman*, 21 F.3d at 1470 (finding the action of only one officer harassing Plaintiff was insufficient to show a wider group of police employees for municipal liability to extend). To state a claim, a plaintiff must allege either that (1) "a particular municipal action itself violates federal law or directs an employee to do so"; or (2) the municipality, through inaction, failed to implement adequate policies or procedures to safeguard its community members' federally protected rights. *Board of Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404 (1997). Either way, we have sufficiently provided notice sufficient to satisfy Rule 8. When a plaintiff pursues liability based on a failure to act, she must allege the municipality exhibited deliberate indifference to the violation of her federally protected rights. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012). We have done so or will make it even clearer should the Court feel otherwise.

The City of Tucson may be sued under Section 1983 because Plaintiff has alleged a deprivation of her constitutional rights, as argued above, and her criminal speeding ticket was issued pursuant to official city policy. Plaintiff has pled that multiple senior officers were involved in disseminating and falsifying information with regard to Plaintiff with no checks or balances or policy controlling their violations as an alternative to its knowing policies allowing it. A criminal speeding ticket requires proof of the charge, which never existed. We presume the City would have sufficient policies to safeguard such flagrant violations of constitutionally protected rights that are fundamental. Plaintiff had a First Amendment right to engage in political activity without fear of retaliation and, as a woman, the right to equal protection under the Fourteenth Amendment. The City of Tucson used an express policy or longstanding practice or custom to violate Plaintiff's constitutional rights or failed to have any policy safeguarding such rights or expressly prohibiting violation of retaliatory conduct by its police, or trying to influence the outcome of elections by official arrests for criminal conduct without probable cause. The City of Tucson does not ensure proof be maintained regarding radar guns claimed to be used, and participated in deliberate indifference in either having policies condoning or allowing this unlawful conduct or not having

any policy at all to prevent such foreseeable abuses of rights fundamental to Plaintiff's constitutional rights. The Defendants, including supervisory Defendants Hall, Hand, and Pettey are all in policy-making roles within management of the Department the City oversees. All Defendants carry out its policies as well as serve in administrative positions capable of creating policy. Allegations made here provide sufficient notice to satisfy the Monell claims under Rule 8. No citation of authority requires more. Unlike in the *Sloman* case, we have multiple officers involved here who have caused harm as a result of implementing municipal policy, or in the absence of any such policy required to avoid such deliberate indifference to rights as demonstrated here.

**RESPECFULLY SUBMITTED** this 17th of June, 2025.

**WILENCHIK & BARTNESS, P.C.**

*/s/ Dennis I. Wilenchik*
Dennis I. Wilenchik, Esq.
The Wilenchik & Bartness Building
2810 North Third Street
Phoenix, Arizona 85004
admin@wb-law.com
*Attorneys for Plaintiff Justine Wadsack*

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2025, I electronically filed the forgoing document with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all registered CM/ECF participants in this case.

Joseph D. Williams
Peter Collins, Jr.
Gust Rosenfeld, P.L.C.
One S. Church Avenue, Suite 1900
Tucson, AZ  85701
jwilliams@gustlaw.com
pcollins@gustlaw.com

*/s/ Alice Nossett*