Joseph D. Williams, State Bar No. 032795
Peter Collins, Jr., State Bar No. 012666
GUST ROSENFELD, P.L.C.
One S. Church Ave., Suite 1900
Tucson, AZ  85701
Tel: 520-628-7070
jwilliams@gustlaw.com
pcollins@gustlaw.com

Attorneys for Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Justine Louise Wadsack,<br><br>        Plaintiff,<br>v.<br><br>City of Tucson, a municipal corporation; Ryder Schrage, both in his personal and official capacity as a City of Tucson police officer; Lauren Pettey, both in her personal and official capacity as a City of Tucson police officer; Kevin Hall, both in his personal and official capacity as a City of Tucson police officer; Frank Hand, both in his personal and official capacity as a City of Tucson police officer; Jane Doe Schrage; John Doe Pettey; Jane Doe Hall; Jane Doe Hand; John Does 1-10 and Jane Does 1-10; and ABC Corporations 1-10,<br><br>        Defendants. | No. 4:25-cv-00145-JGZ<br><br>**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

  Defendants City of Tucson (the "City"), Ryder Schrage, Lauren Pettey, Kevin Hall, and Frank Hand (the "Police Defendants"), by their attorneys, Joseph D. Williams and Peter Collins of the law firm of Gust Rosenfeld, P.L.C., and pursuant to Fed. R. Civ. P. 12(b)(6), hereby reply in support of their Motion to Dismiss.

  Plaintiff's Response to Defendants' Motion to Dismiss fails to salvage the fatal deficiencies in her Complaint. Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6), as shown by the following Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **PLAINTIFF FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

   A.   **The Officers are Entitled to Qualified Immunity.**

In her Response, Plaintiff provides very little authority to support her position and instead rephrases the allegations in the Complaint. She says that facts are in dispute. This is not correct. At this stage, the Court must assume that the factual allegations of the Complaint are true and construe them in the light most favorable to Wadsack. *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).

   1.   **The Allegations in the Complaint, Taken as True, Establish Probable Cause.**

Because the absence of probable cause is an essential element of a malicious prosecution claim (*Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009)), and Wadsack's Complaint, on its face, demonstrates the existence of probable cause for the citation and prosecution, her malicious prosecution claim necessarily fails.

Wadsack attempts to model her claims on *Awabdy v. City of Adelanto*, 368 F.3d 1062 (9th Cir. 2004), but these two cases are distinguishable. Unlike the Defendants' arguments in this case, the *Awabdy* defendants did not, and indeed could not, assert that Awabdy's conduct itself established probable cause for the embezzlement charges against him. Their defense relied on the flawed premise that procedural technicalities alone established prima facie probable cause—a contention the Ninth Circuit rejected. Moreover, the *Awabdy* conspirators' explicit racial animus provided a plausible foundation for his equal protection claim. Here, the Complaint states a basis for probable cause for the traffic stop, citation, and prosecution. Furthermore, the Complaint lacks plausible allegations of animus and intent to deprive.

Completely fabricated allegations and express unconstitutional motives create plausible inferences of malicious prosecution. In *Awabdy*, Esau Awabdy, then a sitting member of the Adelanto City Council, had incurred the disapproval of fellow city officials

by consistently questioning municipal spending and adopting political stances contrary to theirs. *Id.* at 1065. This political antagonism escalated into a conspiracy to undermine his re-election campaign. The individuals implicated in this conspiracy included two other city councilmembers, a police officer, and the city manager. Significantly, the conspirators' motives extended beyond mere political disagreement; they explicitly manifested racial animus, expressing an intent to "get" Awabdy due to his "Arabic extraction." *Id.*

The conspirators acted on this malicious intent by fabricating accusations that Awabdy had embezzled public funds; these allegations were entirely fabricated and lacked any underlying factual basis. *Id.* The false allegations prompted the San Bernardino County District Attorney's office to launch an investigation in May 1999. Just two weeks before the November 2000 election, on October 24, 2000, the District Attorney formally charged Awabdy with embezzlement, a serious violation of California law. Awabdy pleaded not guilty on October 31, 2000. *Id.* The election took place a mere week later. Awabdy suffered a decisive defeat, garnering fewer votes than any of the thirteen other candidates vying for the three at-large seats, while his two incumbent counterparts were re-elected. *Id.* at 1066.

Following a preliminary hearing in December 2000, Awabdy was "held to answer" on the embezzlement charge, indicating the Superior Court found sufficient evidence to proceed. *Id.* However, over a year later, the state Superior Court granted a deputy District Attorney's motion to dismiss the criminal charge against Awabdy. *Id.*

In May 2002, Awabdy brought a civil action under 42 U.S.C. § 1983. *Id.* He alleged that the entire criminal proceeding was engineered through false accusations and conspiratorial conduct by Adelanto city officials, specifically to violate his First Amendment (free speech, political activity) and Fourteenth Amendment (equal protection, race) rights. *Id.*

The district court dismissed Awabdy's case, concluding his allegations fell short on probable cause and intent to deprive. *Id.* at 1066, 1068-069. The Ninth Circuit reversed the district court's dismissal of most claims, with the following relevant findings: (1) The Superior Court's preliminary hearing finding of prima facie probable cause was not conclusive (*Id.* at 1067); (2) Awabdy's complaint contained sufficient allegations for malicious prosecution claims based on First Amendment violations (interference with his re-election campaign and political speech) and Fourteenth Amendment equal protection violations (racial animus towards Arab Americans leading to an unfounded prosecution) (*Id.* at 1071). The Ninth Circuit emphasized that Awabdy's complaint credibly alleged that the defendants knowingly made false accusations and engaged in concerted, wrongful conduct that intentionally resulted in an unfounded criminal charge. *Id.* at 1071. The charges, Awabdy asserted, were "entirely false." *Id.* 1071.

Unlike the circumstances in *Awabdy*, the factual allegations in Wadsack's Complaint demonstrate the existence of probable cause. This distinction, illuminated by the very low legal threshold for probable cause, requires dismissal of Wadsack's claim. In *Awabdy*, the plaintiff's malicious prosecution claim against non-prosecutors rested on allegations that, from their inception, were utterly devoid of any factual underpinnings, and, thus, probable cause, because the alleged crime was invented. Unlike the facts in Wadsack's Complaint that demonstrate probable cause to stop, cite, and prosecute Wadsack, the complaint in *Awabdy* presented no allegations that supported probable cause. No one caught Awabdy embezzling, observed embezzlement, believed embezzlement occurred, or had suspicion of embezzlement. There was no mistaken belief of embezzlement. Wadsack's Complaint arises not from a fabricated crime but from admitted and recorded circumstances wherein Officer Schrage conducted a traffic stop and issued a citation based on his personal observation of Wadsack's driving and her admission to "racing to get home." Wadsack's Complaint does not dispute Officer

1  Schrage's personal observation of her driving, his physical position behind her, or her
2  admission of being "in a hurry" and "racing to get home."
3       This distinction is decisive given the legal standard for probable cause. Probable
4  cause requires only "a reasonable ground of suspicion, supported by circumstances
5  sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the
6  offense." *Gonzales v. City of Phoenix*, 52 P.3d 184, 187 (Ariz. 2002). This standard is
7  markedly distinct from, and significantly lower than, the burden of proof required at trial.
8  Probable cause "requires only a probability or substantial chance of criminal activity, not
9  an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983). It
10 "does not require perfect, admissible evidence for conviction" and does not even rise to a
11 preponderance of the evidence. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir.
12 2006) (en banc). Given Officer Schrage's direct observations of Wadsack's driving and
13 Wadsack's own admissions about her speed and haste, a reasonable officer could
14 objectively conclude that there was at least a "reasonable ground of suspicion" that
15 Wadsack was speeding. This stands in stark contrast to the *Awabdy* scenario, where the
16 very foundation of the crime was alleged to be non-existent. While Wadsack may dispute
17 the ultimate admissibility of radar evidence or her precise speed, such disputes go to the
18 burden of proof at a criminal trial, not the existence of probable cause at the time of the
19 stop, citation, and decision to prosecute. *See Slade v. City of Phoenix*, 541 P.2d 550, 553
20 (Ariz. 1975) ("With such information it was reasonable for the officer to believe that the
21 accused had committed an offense. Aided by hindsight, it is suggested that the police
22 officer should have conducted an independent investigation of the complaint since there
23 was no urgency in filing a criminal case. Additional investigation might have avoided the
24 mistake in this case, but this position confuses the ideal with the minimum"); *Smith v.
25 Almada*, 640 F.3d 931, 937–38 (9th Cir. 2011)("[E]ven after correcting for the allegedly
26 false and omitted information . . . probable cause supported Smith's arrest for arson. For
27 the same reason, probable cause supported Smith's prosecution").

Further, Wadsack's Complaint lacks the type of explicit, unconstitutional animus that solidified Awabdy's claims. The *Awabdy* conspirators' overt expression of intent to "get" him because he was of "Arabic extraction" made plausible a direct and compelling violation of his Fourteenth Amendment right to equal protection. This clear, explicit discriminatory motive satisfies the requirement that the defendants plausibly "intended to deprive" Awabdy of constitutional rights—specifically not to be mistreated by the government due to his race. It is a motive that provides a plausible inference of unconstitutional intent beyond mere political disagreement. Unlike those specific unconstitutional intentions, Wadsack cites no facts regarding the specific malicious intent of each individual Defendant. Wadsack has not explained why it is reasonable to infer that each Defendant harbored a discriminatory animus. For example, no Defendant is alleged to be involved in multiple traffic stops or prosecutions targeting women or political critics, and no Defendant is alleged to have made a sexist comment or a derisive comment about Wadsack's speech. The explicit racial animus present in *Awabdy* provided a plausible foundation for his complaint, a clarity absent in Wadsack's allegations. Wadsack's complaint, while alleging retaliation for political acts and gender discrimination (predicated "upon information and belief"), lacks the distinct, unambiguous, and explicitly stated discriminatory animus that made Awabdy's claim of constitutional deprivation plausible.

The facts in this case are more like those in *Hernandez v. City of Chandler*, No. CV-23-01400-PHX-SHD (ESW), 2025 WL 1179440 (D. Ariz. Apr. 23, 2025). On June 30, 2022, Officer Ramer served Hernandez with an active Order of Protection (OP) that explicitly granted Hernandez's estranged wife exclusive occupancy of their shared residence and barred Hernandez from the premises. *Id.* at *3. Hernandez was personally served with this OP, given 15 minutes to vacate, and subsequently attended a court hearing where the judge kept the OP in place despite his claims that the underlying allegations were "false" and "fabricated." Later, on September 10, 2022, officers were

alerted that Hernandez had returned to the residence, a fact Hernandez himself confirmed to Officer Ramer. *Id.* at *4. Knowing of the active OP and Hernandez's presence, officers arrested him for violating a court order. Hernandez protested his innocence, citing a pending appeal of the OP and a property manager's erroneous advice that he could return. His criminal prosecution was later dismissed. *Id.*

In considering the defendants' 12(b)(6) motion to dismiss, the court found that the allegations in Hernandez's complaint failed to establish a lack of probable cause. *Id.* at *6. The court reasoned that under the totality of the circumstances known to the officers, a prudent person would have sufficient cause to believe Hernandez was violating a current court order. *Id.* at *7*, citing Dubner v. City & County of San Francisco*, 266 F.3d 959, 966 (9th Cir. 2001). Hernandez's claim of a lack of probable cause, like Wadsack's, was fundamentally deficient because the officers were presented with objective, observable circumstances that, under the law's low probable cause threshold, reasonably warranted their actions. Like the legalities of Wadsack's alleged legislative immunity, the officers confronting Hernandez were not arbiters of the OP's underlying truthfulness or the details of his marital dispute. Like the law against speeding and Officer Schrage's observation of Wadsack and her admission to "racing to get home," the officers in *Hernandez* were faced with a facially valid, active court order barring Hernandez from the residence. Furthermore, officers had received confirmation, and Hernandez himself admitted, that he was present in the prohibited residence. Hernandez's subjective belief in his innocence, his allegations about the OP's falsity, or his pending appeal were legally irrelevant to the officers' immediate duty to enforce the active court order. Wadsack claims she does not remember speeding and that the City's evidence would not have been admissible or sufficient to win at trial. However, Officer Schrage's objective observation of her driving and her admission to "racing to get home" provided a clear basis for suspicion. Wadsack's Complaint does not dispute Officer Schrage's personal observation of her driving, nor his position behind her, nor her admission of being "in a hurry" and "racing to get home."

For probable cause, the law does not demand certainty or even a preponderance of the evidence; it merely requires "a reasonable ground of suspicion" that a crime occurred. *Gonzales v. City of Phoenix*, 52 P.3d 184, 187 (Ariz. 2002).

In both instances, Wadsack and Hernandez wrongly equate the exacting standard of proof required for a criminal conviction ("beyond a reasonable doubt") with the far lower standard of probable cause. Unlike a situation where an entire crime is fabricated from thin air (such as the embezzlement claims in *Awabdy*), both Wadsack and Hernandez were confronted by law enforcement acting upon clear, observable circumstances and existing legal directives, providing a clear and objective basis for their actions.

In sum, *Awabdy* describes a direct assault on a public official through a fabricated felony rooted in explicit racial bias, making his "lack of probable cause" and "discriminatory intent" arguments plausible. Wadsack's Complaint, conversely, is built on a minor alleged offense for which a plausible basis for police action readily satisfies the low probable cause standard, further complicated by vague and unsupported allegations of animus. This fundamental disparity renders Wadsack's claims implausible and subject to dismissal.

**2.     Legislative Immunity and Probable Cause are Distinct Issues.**

Wadsack's legislative immunity has nothing to do with the probable cause analysis. The Arizona Constitution says that legislators cannot be arrested for certain crimes or served with civil process during a legislative session. Ariz. Const. Art. IV, pt. 2, § 6. Neither happened here. Furthermore, the charges brought against Wadsack fall under the legislative immunity statute's exception for crimes related to "breach of the peace." *See Picray v. Sealock*, 138 F.3d 767 (9th Cir. 1998) (quoting *Williamson v. United States*, 207 U.S. 425, 446 (1908)); *Patterson v. Pima Cnty. Sheriff's Dep't*, No. CV-13-01779-TUC-RME, 2014 WL 5792941, at *9 (D. Ariz. Nov. 6, 2014) ("While there is no specific definition of breach of the peace in the Arizona Criminal Code or the Arizona Constitution . . . the Ninth Circuit has noted that the Supreme Court has read the breach

of the peace exception to federal legislators' immunity from arrest to encompass all criminal offenses")(internal quotations and citations omitted).

Moreover, even if probable cause were somehow found to be lacking, the Police Defendants would be entitled to qualified immunity, as no reasonable officer would have understood that conducting a stop based on observed speeding and issuing a citation under these circumstances would have violated a clearly established right. Wadsack cites *Thorsted v. Kelly,* 858 F.2d 571 (9th Cir. 1988), but the case does not support Wadsack's claims. There, the court said, "When available, entitlement to qualified immunity may be established as a matter of law by the district court on a motion to dismiss." 858 F.2d at 575. Therefore, the Court should find that the Complaint fails to allege a lack of probable cause and dismiss Wadsack's claims.

### 3. There is No Plausible Basis for any Claim of Sexual Discrimination.

Wadsack's Response attempts to implicate a sexual bias on the part of Captain Lauren Pettey and the Tucson Police, without any credible factual basis. The Response throws Wadsack's sexuality into the same sentence with her legislative position in order to create *some* basis for relief under the Fourteenth Amendment. But the Complaint contains no plausible allegations that could lead to such an inference.

### B. The Alleged False Report and Leaks to the Press do not Satisfy Any Element of Any Claim.

As articulated in the Motion to Dismiss, Section 1983 does not create a cause of action for claims akin to defamation. The false report and leaks to the press cannot demonstrate a Constitutional violation because they are akin to defamation and not actionable. Wadsack attempts to model her direct Constitutional violation claims on *Awabdy*, but the cases are again distinguishable. The distinction lies in the nature of the alleged adverse action by state officials and the directness of the resulting constitutional injury. In *Awabdy*, the plaintiff's direct First Amendment claim was plausible because he alleged that the defendant city officials' false accusations and other wrongful actions

directly resulted in the wrongful initiation of an unfounded criminal charge. *Awabdy*, 368 F.3d at 1070-71. Wadsack's allegations, however, diverge sharply and fatally.

Wadsack does not allege that Officer Pettey's "false" police report or other Defendants' press leaks directly led to the criminal charge itself. Instead, her Complaint asserts that leaks caused the press to publish erroneous reports, which in turn led the public not to vote for her. Wadsack's direct First Amendment claims are distinguishable from *Awabdy* and fail to state a plausible claim for relief, warranting their dismissal.

### C. The Intracorporate Conspiracy Doctrine Applies.

Plaintiff cites *Cohen v. Norris* to support her claim that the intracorporate conspiracy doctrine does not apply. 300 F.2d 24 (9th Cir. 1962). However, in *Cohen,* the defendants did not raise the intracorporate conspiracy doctrine and the court did not discuss it. The court merely stated that plaintiffs may allege conspiracy in § 1983 actions. *Id.* at 27. Wadsack incorrectly summarizes the Defendants' position by stating that they argue only the City cannot conspire with its employees. In fact, the Defendants argue that the intracorporate conspiracy doctrine applies, and Wadsack has not rebutted the Defendants' authority, demonstrating that the intracorporate conspiracy doctrine bars her conspiracy claim.

## II. CONCLUSION

Wadsack failed to allege any claim against the Defendants upon which relief could be granted. These defects cannot be cured. Accordingly, Wadsack's Complaint must be dismissed.

**WHEREFORE**, Defendants respectfully request that this Court grant relief as follows:

    a.    Dismissing Plaintiff's Complaint as to the Police Defendants and the City of Tucson with prejudice;

    b.    Entering judgment in favor of the individual Defendants and the City of Tucson and against Plaintiff for attorneys' fees and costs; and

     c.    Such further and other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED: June 24, 2025.

                              GUST ROSENFELD P.L.C.

                        By: */s/ Joseph D. Williams*
                              Joseph D. Williams
                              Peter Collins, Jr.
                              *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was transmitted this June 24, 2025 to the Clerk's Office using the CM/ECF System for filing and a transmittal of same to the CM/ECF Registrant:

Dennis I. Wilenchik
David N. Ferrucci
Wilenchik & Bartness, P.C.
2810 N. Third St.
Phoenix, AZ  85004
diw@wb-law.com
davidf@wb-law.com
admin@wb-law.com

By: */s/ Jackie Clark*